WASHINGTON N. GAS Co. v. M. J. JOHNSON, ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF WASHINGTON
COUNTY.

Argued October 17, 1888—Decided February 18, 1889.

1. Owing to his privity of contract with the lessor, a lessee's liability upon his covenants in an oil- and gas-lease, continues after his assignment of the lease; but an assignee of the lease, being in privity of estate only with the lessor, is liable only upon covenants which are broken while his privity of estate exists.

2. Each successive assignee would be liable upon covenants which are broken while the title is held by him, but, because of the absence of any contract relations with the lessor, he would not be liable upon covenants broken before he obtained title or maturing after he had parted with it.

3. An assignee of an oil- and gas-lease is not liable to the lessor upon a covenant of the lessee to drill a well upon the demised premises, when the time for performance had elapsed before the assignee acquired title under the assignment: Bradford Oil Co. v. Blair, 113 Pa. 83, distinguished.

4. If, pending the adjustment of a disputed liability, the debtor transmit money to his creditor as a payment in full of the demand, the creditor may not receive and retain the money as a credit upon a larger sum claimed by him, without discharging the debtor as to the whole.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 146 October Term 1888, Sup. Ct.; court below, No. 335 August Term 1887, C. P.

On August 2, 1887, a summons in assumpsit issued in an action by M. J. Johnson and others, against the Washington Natural Gas Company. The plaintiffs in their statement set out the provisions of a certain grant and demise of lands for the purpose of drilling and operating wells for oil and gas, hereinafter quoted, and averred as their ground of action that the lessees and their assigns had broken their covenants made with the plaintiffs, in that they had "failed to commence a second well upon said leased premises within the time men-

tioned in said lease, to wit, within four months from May 1, 1886, or at any other time," to the damage of the plaintiffs in the sum of $800. The defendant pleaded non assumpsit, payment, payment with leave.

At the trial on June 14, 1888, the material facts made to appear were as follows:

On August 5, 1885, the plaintiffs, in consideration of the covenants, etc., on the part of W. S. Guffey & Co. demised to said W. S. Guffey & Co., a tract of land in Mt. Pleasant township, containing about 75 acres, for the purpose of drilling and operating wells, etc., for the term of twenty years. The lease contained the following provisions:

" The said parties of the second part hereby covenant in consideration of the said grant and demise to deliver unto the said parties of the first part, their heirs and assigns, the full and equal one fourth part of the petroleum oil discovered and produced on the premises herein leased, and to deliver the same in pipe lines to the credit of the parties of the first part free of charge.

" It is further agreed that if gas is obtained in sufficient quantities and utilized, the consideration in full to the parties of the first part shall be eight hundred dollars ($800) for each and every well drilled on the premises herein described, per annum, payable within sixty days after completion of such well, and thereafter yearly in advance, at First National Bank, Washington, Pa.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

" Operations on the above described premises shall be commenced and one well completed within six months from the date hereof, and in case of a failure to complete one well within such time, the parties of the second part hereby agree to pay to the parties of the first part, for such delay, the sum of one hundred and fifty dollars, payable at First National Bank, Washington, Pa., and the parties of the first part hereby agree to accept such sum as full consideration and payment for such delay until May, 1886, when one well shall be completed, and a failure to complete one well or to make any of such payments within such time and at such place as above mentioned, renders this lease null and void and to remain without effect between the parties hereto.

"And it is further agreed the second well shall be commenced four months after May, 1886, the time stated for the completion of well number one.

"It is understood by and between the parties to this agreement that all the conditions between the parties hereto shall extend to their heirs, executors and assigns."

The plaintiffs having shown title and the foregoing lease, called William Davidson: .

Plaintiffs propose to prove by the witness on the stand that he is one of the plaintiffs in this case; that the lease was made of their farm to W. S. Guffey & Co.; that the said Guffey & Co., or their assigns, completed one well upon said premises, but that no second well has been commenced and completed either by the said Guffey & Co. or by their assigns; that if the said second well had been commenced at the time specified in said lease and the drilling thereof pursued with due diligence, it would have been completed about January 1, 1887, and that the $800 royalty for said well would have become due and payable after the assignment of the lease to the present defendant; and further, to show that the present defendant, as assignee of C. D. Robbins, who was the assignee of the original lessees of the premises, took possession of said premises, and were in possession thereof at the time of this suit, and that they were receiving the gas from the first well drilled; and that no payment of the $800 or any other amount has been made to the said plaintiffs by the lessee or any of his assigns for that second well which should have been drilled by the terms of the lease; this for the purpose of showing that the plaintiffs are entitled to recover in this case the sum of $800, being the amount of the rental for the second well stipulated in said lease; and further, to prove that one strong gas well has been obtained on the premises leased; that the well is still flowing and utilized by the defendant company, and that the farm is located in the Hickory gas field, and that good producing wells have been obtained on other farms in the immediate vicinity.

Objection: So much of this offer as follows the statement in regard to the completion of the first well, is objected to, (1) for the reason that for a breach of such a covenant the plaintiffs would not have a right of action to recover rental upon an

undrilled well, but their right of action would be an action for damages for the breach of the covenant ; (2) for the reason that the offer shows that this covenant was broken prior to the acquirement by the defendant of the leasehold in question: that such a covenant will not, after a breach, run with the land and bind a subsequent assignee ; that the defendant is not liable to the plaintiff for a prior breach of such a covenant; and the offer is objected to as irrelevant and incompetent in this action against the defendant; and further, the general objection that the offer is incompetent and irrelevant.

By the court: Objection overruled, offer admitted.[1]

It was then shown that on March 18, 1886, W. S. Guffey & Co. assigned the foregoing lease to C. D. Robbins, who drilled well No. 1 upon the premises, completing it in the summer of 1886. The well produced no oil, but sufficient gas to be utilized. About May 1, 1886, $800 had been paid by Mr. Robbins on account of the rental of this well from May 1, 1886, to May 1, 1887. A location for a second well was made and a derrick erected about October 1, 1886, but drilling was not begun. On January 20, 1887, Mr. Robbins assigned the leasehold to the Washington N. Gas Co. who went into possession, turned the gas from well No. 1 into its lines for transportation to Pittsburgh, and continued in possession of the leasehold at the time the suit was brought. The second well was never drilled. Three months was a reasonable time in which to drill a well in that district.

In July, 1887, a difficulty arose with the defendant company in reference to the amount that was due to the plaintiffs. On July 16th, Mr. L. McCarrell, representing the plaintiffs as their attorney, wrote to John F. Scott, the treasurer of the defendant company as follows: "I have this day received a letter from the Johnson heirs, in which they say they will accept $600 cash for rental of well, provided company pays counsel fees, which will be, say $50 additional, making the whole amount payable by your company now, $650."

On July 19th, Mr. Scott, for his company replied: "Your favor of 16th to hand. Enclosed I hand you check for six hundred and fifty ($650) being in full for the Johnson lease from May 1, 1887, to May 1, 1888. Please send receipt."

On July 20th, Mr. McCarrell acknowledged the receipt of the check and returned a statement which was as follows:

Charge of Court below.

WASHINGTON NATURAL GAS CO.

　　　　　　　　　　　　　　To JOHNSON HEIRS, Dr.

To rental of well No: 1, in Johnson lease, Mt.
　Pleasant tp., Washington Co., from May 1,
　1887 to May 1, 1888 　.　　.　　.　$600.00
Attorney fee, 　.　　.　　.　　.　　.　　50.00——$650.00
Received payment, July 20, 1887, of above bill, from
　Washington N. Gas Co. 　　　　L. McCARRELL,
　　　　　　　　　　　　Attorney for Johnson Heirs.

On July 21st, Mr. Scott wrote Mr. McCarrell: "Your favor
of the 20th at hand. I return the receipt. The $650 was sent,
and so stated, in full for Johnson lease from May 1, 1887, to
May 1, 1888. If you cannot accept, please return check. We
will then sell lease and give party the right to remove every-
thing."

To this letter Mr. McCarrell replied on July 23d: "Yours,
returning receipt, received; and in reply would say, that in no
way did I ever suggest to you that the $600 or $650 was to be
anything else than 'for rental for gas from first well.' This
was the proposition submitted by me to my clients, and by me
to you, and no other receipt than that sent to you will be
given, unless your company will agree to put down the second
well at once. If you will commence a second well at once,
we will release you from rental up to date well is turned into
line."

The court, McILVAINE, P. J., after reviewing the testimony,
charged the jury, in part, as follows:

Now, gentlemen, the consideration of this case, as it has been
presented, involves the determination of a question of law and
a question or questions of fact. The question of law must
be determined by the court, and the questions of fact by you.
As we have already said, this lease was made to William S.
Guffey & Co., August 5, 1885. On March 18, 1886, it was
assigned by them to C. D. Robbins, and on January 20, 1887,
it was assigned by Mr. Robbins to the defendant company,
which has held it and been in possession of the property leased
ever since the last mentioned date. It is claimed by the
defendant company that as this second well was to have been

commenced within four months from May, 1886, which would be about the first of October, 1886, therefore they are not liable in this action, because the breach of the covenant complained of was before the date at which the assignment was made to the company. It is true as a general proposition of law, "that a total breach of a covenant which affects realty, becomes a mere personal right, which does not descend with the land to the heirs, nor run with any future assignment to third parties. Where the right of action falls, there it lies." But let us look at this lease and at the facts, as the plaintiffs allege they are, and see if this principle of law will relieve the defendant from liability in this case. The plaintiffs leased their farm, and their evident intent in making the lease was, if their land proved to be paying gas territory, to obtain from the lessee, or their assigns, the price of at least two wells, or $1,600 per annum. The lessees, or their assigns, could hold the leased premises twenty years, and could drill as many wells as they saw fit within the twenty years, and could drill them when they pleased, provided, they drilled at least two wells, so that within a certain time the lessors would be receiving at least $1,600 per year as the usufruct or rental of the leased premises. It was the increased rental of $800 which the completion of a second paying well would insure to the plaintiffs, that they wished to secure to themselves, when they inserted in the lease that a second well was to be commenced within four months from May, 1886. [The true interpretation of the lease is, that the lessees bound themselves and their assigns not only to commence a second well by October 1, 1886, and diligently drill it to completion, but, if gas was found and utilized, to pay to the lessors, the plaintiffs in this case, $800 within sixty days after its completion; and the payment of the $800 at the end of the sixty days is the vital part of this agreement to the plaintiffs. The breach of this covenant to drill a second well is not complete until the end of the sixty days, as the $800, until then, is not over-due. The commencement of the breach was the failure to begin a second well on or before October, 1886; and the consummation was in not paying the $800, when it ought to have been paid, had a paying well been struck.] [5] Suppose C. D. Robbins, the holder of the lease, on October 1, 1886, according to the provisions of the lease, had commenced a well and

had diligently prosecuted the work thereon, and in a reasonable length of time, which, according to the testimony, would have been January 1, 1887, had struck gas in paying quantities which was utilized; could he have been sued by the plaintiffs for the $800, the price of this well, before January 20, 1887, the date on which he assigned the lease to the defendant company? Certainly not, for the $800 was not necessarily payable until sixty days after the completion of the well, which would be March 1, 1887, nearly one month and a half after the date at which the defendant company went into possession. [Again, we hold that the obligation to drill a second well continued, and that it fell upon the defendant company on the day they took possession of the leased premises under the assignment. And, if by the exercise of due diligence the company has had time to drill a second well to completion, and in addition to that time, sixty days in which to pay the $800 had expired before the bringing of this suit, which was brought about July 29, 1887, then the company would be liable in this suit as the assignee of this lease.] [2]

\* \* \* \* \* \* \* \*

Now, gentlemen, taking it for granted you find there has been a failure to drill a second well, and that that failure has worked an injury to the plaintiffs, still the defendant company, in their defence, go a step further, and say that a compromise was consummated and that $650 was paid to the plaintiffs by the defendant company in full satisfaction of this claim for damages for not drilling a second well. Whether there was such a compromise you must determine from the evidence. [If you believe that the damage for not drilling this second well was included in the compromise, which resulted in the payment of $650 some two weeks before this suit was brought, then your verdict should be for the defendant; but if you think the $650 was paid only in satisfaction of the claim for rental of well No. 1, then the compromise would not affect this suit one way or the other.] [9]

The defendant has asked us to charge you as follows:

1. If the jury believe that the payment of the $650, under the compromise agreement, was made in full satisfaction of all liability under the Johnson lease, from May 1, 1887, to May 1, 1888, the plaintiffs were bound to return or tender the amount

so paid, before bringing suit, and having failed to do so the verdict must be for the defendant.

Answer: This point is affirmed if you find the facts as therein set forth.

2. Even though there was a misunderstanding between the plaintiffs and defendant as to what was included in the compromise agreement, the defendant having expressly stated the payment of the $650 to be in full satisfaction of all liabilities under the lease from May 1, 1887, to May 1, 1888, the plaintiffs' acceptance of and refusal to return the money so paid, estops them from now disputing that it was in full of all liability for the year mentioned, and the verdict must be for the defendant.

Answer: Affirmed, if the jury find that the facts are as stated in this point.

3. The defendant having demanded back the money paid under the compromise, unless the plaintiffs would accept it in full of all liability under the lease, from May 1, 1887, to May 1, 1888, the plaintiffs' retention of the money so paid gave their consent to the terms and conditions upon which said payment was made, and they are now bound thereby.

Answer: Affirmed, unless the jury find that, prior to the time the check was sent and received, the parties had actually and fully consummated a compromise which provided for the payment of $650 for the rental of this first well alone, and which did not include the second well.[8]

4. Even if L. McCarrell, Esq., the agent for plaintiffs, was not authorized to compromise for well No. 2, the plaintiffs have ratified his acts since the commencement of this suit, by retaining the money paid, after having knowledge of the circumstances under which it was paid.

Answer: Affirmed, if the jury find the facts are as stated in the point.

5. The defendant having become assignee of the lease after the four months had expired within which the second well was to have been commenced, the defendant cannot be held liable for the breach of the covenant to commence said second well, and the verdict should be for the defendant.

Answer: Refused.

6. The plaintiff having shown, and it being a conceded fact,

Charge of Court below.

that a reasonable time for drilling said second well had elapsed before defendant became assignee of the lease, the defendant cannot be held liable for a failure to drill said second well.

Answer: Refused.[3]

7. It being shown by the plaintiffs themselves that the covenant in the lease offered in evidence, to commence a second well within four months from May, 1886, was broken before the defendant acquired any interest in said lease, the proper remedy of the plaintiffs for such breach was an action against the original lessee, or the holder or holders of the lease at the time of the breach; the defendant is not liable for the breach aforesaid, and the plaintiffs are not entitled to recover.

Answer: Refused.[4]

·Now, gentlemen, we leave this whole case with you. If you believe, first, that whatever difficulty there may have been between these parties in regard to the payment of the rental on the first well and for not drilling the second well, or for the rental of the second well the same as though it were drilled, was compromised by these parties, then your verdict must be for the defendant, and you need go no further. If you find for the plaintiffs on that question, and think the compromise did not include this second well, then the next question is whether there was a failure to drill the second well; and there is no dispute about that. Then the next will be, did that failure, judging from all the evidence in this case, damage the plaintiffs. Are you satisfied by a preponderance of the evidence that this failure actually damaged the plaintiffs? If you think it did not damage the plaintiffs, and that they would not likely have got anything therefrom, if the defendant company had drilled the second well, then your verdict should be for the plaintiffs for six and one fourth cents damages, simply for not drilling the well, nominal damages for the breach. [If you, however, think that not drilling that second well did actually damage them, then you will determine how much it damaged them; if, in all probability the second well would have been a paying well, then are they entitled to the full yearly rental, which was $800, with interest from the time it ought to have been completed.][6] These are all the remarks I wish to make in this case, and you will take it and give it such careful consideration as the case deserves, bringing in

such a verdict as you think will do justice between these parties upon all the evidence.

The jury returned a verdict in favor of the plaintiffs for $800. Judgment having been entered upon the verdict, the defendant took this writ, assigning as error:

1. The admission of plaintiffs' offer.[1]
2. The part of the charge embraced in [ ] [2]
3, 4. The answers to defendant's points.[3] [4]
5, 6. The parts of the charge embraced in [ ] [5] [6]
8. The answer to defendant's third point.[8]
9. The part of the charge embraced in [ ] [9]

*Mr. Gibson D. Packer* (with him *Mr. J. I. Brownson, Jr.*), for the plaintiff in error:

The time limited for drilling the second well cannot be disregarded any more than the obligation to drill it. The obligation to drill arises out of the same covenant that limits the time. As three months was a reasonable time for drilling a well, the meaning of the covenant then was to drill a second well before January 1, 1887. The breach of this covenant occurred before the liability of defendant began.

1. It has always been held that a covenant running with the land ceases to run as such after breach, and will not bind a subsequent assignee: Negley v. Morgan, 46 Pa. 281 ; Daily v. Beck, Bright. 107 ; Taylor's L. & T., § 449 ; Jackson and Gross, L. & T., § 980 ; Borland's App., 66 Pa. 470. And the fact that the thing covenanted to be done is to be performed within a specified time, and is for the benefit of the lessor as well as of the lessee, forms no exception to the rule : Southwark v. Smith, 3 Burr. 1271 ; Fisher v. Lewis, 1 Clark 431 ; Grescott v. Green, 1 Salk. 199 ; Pollman v. Morgester, 99 Pa. 611 ; Fisher v. Lewis, 1 Clark 422.

2. But, conceding that the covenant to drill a second well continued to run with the land at the time of the assignment of the lease to the defendant company, the utmost duty it could impose would be to drill the second well. The three months required for that, with the sixty days additional for the payment of the rental, would make June 20, 1887, the earliest date at which suit could be brought against the de-

fendant to recover the $800 rental. But the court instructed that plaintiffs could recover $800 as of date March 1, 1887. Yet the annual rental as such never accrued, and the breach declared on is not a failure to pay rental but a failure to drill; and the plaintiff's only remedy was an action for damages.

3. Charging the defendant with the payment of $800 rental as of March 1, 1887, is holding it responsible for a breach committed by its assignor. An assignee of a lease is liable only by reason of privity of estate, and, therefore, only for breaches of covenants committed while that privity exists: Negley v. Morgan, 46 Pa. 281. The plaintiff's only remedy being an action for damages for breach of the covenant to drill the second well, against the assignee in possession at the time of the breach, the breach was complete and an action was maintainable January 1, 1887, notwithstanding the sixty days allowed for payment of rent on producing wells had not expired: Lamoreux v. Rolfe, 36 N. H. 33; Alcott v. Hugus, 105 Pa. 350; Ætna Ins. Co. v. Nexsen, 84 Ind. 347 (43 Amer. R. 91); Hochster v. De La-Tour, 2 Ell. &. B. 678.

4. The plaintiffs were precluded from bringing their action by their receipt and retention of the $650 paid by defendant. It was immaterial whether well No. 2 had been covered by any prior agreement or not, since this would be at most only an accord without satisfaction, and not binding on either party, so long as it remained executory: Hearn v. Kiehl, 38 Pa. 147; Blackburn v. Ormsby, 41 Pa. 97; Bagley v. Hornan, 32 E. C. L. R. 915; 3 Black. Com. 15; Ball v. Ball, 43 Conn. 455; McDaniels v. Lapham, 21 Vt. 222; Simmons v. Hamilton, 56 Cal. 493; Schlitz v. Meyer, 61 Wis. 418; Cushing v. Wyman, 44 Me. 134; Kromer v. Heim, 75 N. Y. 574 (31 Amer. R. 491).

5. Even when a party is chargeable with fraud in the procurement of a compromise of a claim against him, the other party is bound to return the fruits of the compromise, before bringing suit on the original cause of action; he cannot retain the money paid, and at the same time repudiate the terms of its payment: Staines v. Shore, 16 Pa. 204; Morrow v. Rees, 69 Pa. 373; Herman on Estoppel, § 1043; Gould v. National Bank, 86 N. Y. 75; Bisbee v. Ham, 47 Me. 543; Fink v. Knauss, 4 W. N. 356. The plaintiffs' protest that the payment

would be accepted only on account of rental of well No. 1, will not avail them: Ball v. Ball, 43 Conn. 455; Preston v. Grant, 34 Vt. 201; McDaniels v. Lapham, 21 Vt. 222.

*Mr. R. W. Irwin*, (with him *Mr. L. McCarrell, Mr. E. E. Crumrine* and *Mr. Boyd Crumrine*), for the defendants in error:

1. Whether a covenant will run with land must depend, in the first place, upon the nature and character of the particular covenant and of the estate demised, as connected with the respective rights of lessor and lessee, in reference to the subject matter of the covenant; and, in the next place, upon the intent of the parties in the creation of the estate, as shown by the language of the instrument creating it, construed with reference to the relative positions of the parties, and to the subject matter to which their contract and conveyance are to be applied: Masury v. Southworth, 9 Ohio, N. S., 344; Spencer's Case, 1 Smith's L. C. 131; Barclay v. Steamship Co., 6 Phila. 558. The words of the covenant are: "And it is further agreed the second well shall be commenced four months after May, 1886, the time stated for the completion of well No. 1." And there is this clause: "It is understood by and between the parties to this agreement, that all the conditions between the parties hereto shall extend to their heirs, executors, and assigns."

2. The benefit of a covenant relating to land, that is to say, the right to enforce it against the covenantor and his personal representatives, will pass with the land to every one to whom it may subsequently be transferred. And whenever the relation of tenure is created by a grant, all the covenants of the grantee, for himself and his assigns, which affect the land granted, will be a charge upon it and bind every one to whom it may subsequently come by assignment: 1 Smith's L. C. 159; Torrey v. Wallis, 3 Cush. 442. The covenant to drill the second well and to pay the stipulated price therefor, was a part of the consideration which induced the plaintiffs to execute the lease; and the defendant took the assignment of the lease with full knowledge of the covenants it contained. It held the lease, retained possession of the farm, and it utilized the gas from the well already drilled; how can it refuse performance

of the covenant which was a part of the consideration inducing the execution of the lease? Bradford Oil Co. v. Blair, 113 Pa. 83.

3. The authorities cited by the defendant were cases where the lessee covenanted to complete a certain thing by a certain time, and it was held that the covenant was not binding upon an assignee who took the lease after the time limited for the completion of the work to be performed. In none of the cases was it decided that a breach of the covenant to commence the work, before assignment of the lease, would relieve the assignee from liability for a breach of the implied covenant to complete the work. In the case at bar, there was an express covenant to commence a second well by October 1, 1886. On October 2, 1886, an action of covenant might have been maintained, for breach of the covenant to commence, though but nominal damages could have been recovered: Marriott v. Cotton, 2 C. & Kir. 553; Worcester Schools v. Rowlands, 9 C. & P. 734.

4. If after suit brought the covenantor should commence and partially drill a well, a recovery of nominal damages in the prior suit, could be no bar to a second action. Hence, we maintain there was an implied covenant to complete the well; that this covenant continued and was binding upon the lessee at the very moment of the assignment. Now the whole argument of the defendant rests upon the assumption that the covenant to commence a second well on October 1, 1886 was broken. But was it broken? The well would be commenced when the parties began the erection of a derrick; and the evidence clearly shows that a derrick was erected for this second well a few days before October 1, 1886. The covenant to commence was therefore complied with, and the authorities cited by the defendant are inapplicable.

5. But it is claimed that if the covenant to drill a second well does run with the land, the proper remedy is an action for damages for breach of the covenant and not an action to recover the rental of the well. That is, the assignee may say, It is true I am bound by the covenant; if I had drilled the well I would have had to pay the rent, but I broke my covenant; I did not drill the well, and therefore am not obliged to pay the rental. The verdict of the jury upon the evidence establishes that gas would have been found in paying quanti-

ties; the demise is, then, in effect the grant of the right to drill for oil or gas, the lessee to pay therefor the annual rental of $1,600. Can the defendant defeat the right of the plaintiffs to this sum, by refusing to perform its covenant?

6. The plaintiffs had a right to demand and the defendant was bound to pay $800 for the first well, the amount being liquidated by the terms of the lease; and, when defendant sent the check for $650, upon the offer made by the plaintiffs, through their attorney, it paid nothing more than it was bound to pay, without reference to well No. 2, and the retention of the money was no wrong and did not estop the plaintiffs. While it is true that a mere accord, without satisfaction, is not binding upon either party, yet it is equally true that a mere receipt by a creditor of part of his debt when due, is not a good defence by way of accord and satisfaction to an action for the remainder, although the creditor agreed to receive it in full satisfaction: 2 Chit. on Con., 1101; Warren v. Skinner, 20 Conn. 559; Smith v. Bartholomew, 1 Met. 276; Mitchell v. Cragg, 10 M. & W. 367; Twitchell v. Shaw, 10 Cush. 46; Seymour v. Minturn, 17 Johns. 169; Johnston v. Brannon, 5 Johns. 271; Dederick v. Leman, 9 Johns. 333; Tuttle v. Tuttle, 12 Met. 551. The defendant owed the money, was bound to pay it, and pay it unconditionally. The demand was liquidated. The defendant was not in a position to dictate terms.

OPINION, MR. JUSTICE WILLIAMS:

This action is brought to recover for a breach of covenant contained in an oil-lease dated August 5, 1885. By the terms of the lease Guffey & Co., the lessees, acquired the exclusive right to drill and operate wells for oil and gas on about seventy-five acres of land for the term of twenty years. In consideration of this grant they undertook to commence operations on the premises, and complete one well within six months from the date of the lease. They were also to commence a second well four months after the time for the completion of well No. 1. The royalty to be paid was fixed by the terms of the lease at one fourth of all oil produced if oil was found, and eight hundred dollars per annum for each gas well operated, if gas was found in sufficient quantities to be utilized. The

lessees took possession and drilled one well in accordance with their covenant, which produced gas in sufficient quantities to be utilized. Three months before the time for putting down the second well Guffey & Co. assigned the lease to C. D. Robbins, who held it from March 18, 1886, till January 20, 1887, and then assigned to the Washington Natural Gas Co. The second well should have been drilled, allowing three months to be a reasonable time in which to complete it, during the time when Robbins was the holder of the lease. The action, however, is against the assignee of Robbins, whose title was acquired some two months after the time when the well should have been completed, and at least five months after it should have been begun.

The liability of the assignee was brought to the attention of the court by the sixth point submitted on the part of the defendant below, as follows: "It being a conceded fact that a reasonable time for drilling said second well had elapsed before defendant became assignee of the lease, the defendant cannot be held liable for a failure to drill said well." This point was refused. The seventh point asked the further instruction that "it being shown by the plaintiffs themselves that the covenant in the lease .... to commence the second well .... was broken before the defendant acquired any interest in the lease, the proper remedy for such breach was an action against the original lessee, or the holders of the lease at the time of the breach." This was also refused; and the learned judge told the jury in his general charge that the breach of the covenant to drill a second well was not complete until the end of sixty days after the well should have been finished, because that was the time when the rent for the second well would fall due. "The commencement of the breach," said the learned judge to the jury, "was the failure to begin a second well on or before October, 1886, and the consummation was in not paying the eight hundred dollars when it ought to have been paid had a paying well been struck." The answers to the points and the foregoing instruction are assigned for error.

The covenant sued on is as follows: "And it is further agreed the second well shall be commenced four months after May, 1886, the time stated for the completion of Well No. 1."

The plaintiffs allege a breach of this covenant, and state their cause of action to be that the defendant "has failed to commence a second well upon said leased premises within the time mentioned in said lease, to wit, within four months from May 1, 1886, or at any other time." The instruction of the learned judge, that a covenant to commence a well at a fixed time was only partly broken by a failure to commence it, is not in harmony with the plaintiffs' claim as stated in their narr., nor is it justified by the terms of the covenant. If the well had been drilled at the proper time the covenant would have been fully performed, though neither gas nor oil had been found, and in that event no rent would have been demandable. The duty to pay rent for the second well, as for the first one, was conditioned upon actual production, and it ceased when the production ceased, or when the quantity of gas was too small to be utilized. The object of the covenant was to secure the development of the lessor's land by the putting down of two wells upon it, for which rent was to be paid if the wells were successful. The breach was complete when the lessee failed to drill as he had agreed. Loss of rents and profits might or might not follow, depending on the productiveness of the field. This subject might have been considered by the jury in fixing the damages after the plaintiffs' right to recover was settled, but had no relation whatever to the question on which the liability of the defendant depended.

Turning then to the question raised by the points, we find the facts to be as assumed therein, and the liability of the gas company to depend upon the extent to which the covenants of Guffey & Co. ran with the land. That they continued liable, notwithstanding their assignment to Robbins, is very clear. The covenant was their own, and their privity of contract with their lessors continued, notwithstanding their assignment of the lease. Their assignee, Robbins, who was in possession when the time for performance arrived, was also liable, because of the privity of estate which arose upon his acceptance of the assignment. Acquiring the leasehold estate by an assignment of the lease, he is fixed with notice of its covenants, and he takes the estate of his assignor cum onere. But as his liability grows out of privity of estate, it ceases when the privity ceases. If he had assigned before the time for performance, his liability

would have ceased with his title, and liability would have attached to his assignee by reason of privity of estate, and so on, toties quoties. Each successive assignee would be liable for covenants maturing while the title was held by him because of privity of estate; but he would not be liable for those previously broken, or subsequently maturing, because of the absence of any contract relations with the lessor. While he holds the estate and enjoys its benefits, he bears its burdens, but he lays down both the estate and its burdens by an assignment, even though, as is said in some of the cases, his assignment be to a beggar: Negley v. Morgan, 46 Pa. 281; Borland's App., 66 Pa. 470.

It is clear, therefore, that when Robbins made his assignment to the Washington Natural Gas Co., the time fixed in the lease for the sinking of the second well had gone by, and the covenant was broken. Guffey & Co. were liable upon their contract, because although their assignment had divested them of the lease, it could not relieve them from their contracts. Robbins, who was the owner when the covenant matured, was liable because of the privity of estate; but the gas company had no relations with the lessor or the leasehold until after the covenant was broken. The covenant ran with the land until the breach. It then ceased to run, because it was turned into a cause of action.

The case of the Bradford Oil Co. v. Blair, 113 Pa. 83, has been cited as sustaining a contrary doctrine, but an examination of it will show that it is clearly distinguishable from this case.

The covenant which it was sought to enforce in that case was not for the completion of successive wells at successive dates, but it was for the commencement of the work of developing Blair's farm at a time certain, and to "continue with due diligence and without delay to prosecute the business to success or abandonment, and, if successful, to prosecute the same without interruption." Two wells were completed, and were successful oil wells. The assignee of the lease owned adjoining lands upon which it was operating, and it stopped work on the Blair farm. The action rested on the breach of the covenant to prosecute the business of producing oil from the land of the lessor with due dilligence and "without inter-

ruption." The obligation of a covenant to prosecute the business of developing the land of the lessor without delay and without interruption, is a continuing one. The breach for which the Bradford Oil Co. was held liable was not that of some previous holder of the title, but its owner.

There is another reason for reversing this case, brought to our attention by the eighth assignment of error. The check for $650, sent by the treasurer of the gas company to the attorney of the lessors, was expressly stated to be in full for the Johnson lease from May 1, 1887, to May 1, 1888. A receipt was returned for the amount, stating that it was received for rental of well No. 1, on Johnson lease. The treasurer promptly returned the receipt, saying, "The $650 was sent, and so stated, in full for Johnson lease," and requesting its return if not accepted as sent. It was not returned. The party paying money has the right to direct its appropriation. It was the plain duty of the lessor to accept the check for the purpose for which it was offered, or to return it. Attention was again drawn to the subject by the treasurer in a note dated July 21st, asking the return of the check unless accepted as in full payment of all rents due on the lease. The refusal to return it after this explicit direction ought to be regarded as an election to accept it for the purpose for which it was offered, viz.: as payment in full for all rents due upon the lease.

Judgment reversed.