**OSAGE OIL CORPORATION v. McGUIRE.**

No. 12518.

Court of Civil Appeals of Texas. Fort Worth.

July 3, 1931.

Rehearing Denied Sept. 26, 1931.

Cantey, Hanger & McMahon and Fisher Denny, all of Fort Worth, for appellant.

McFarlane & McFarlane, of Graham, for appellee.

DUNKLIN, J.

H. B. McGuire entered into a written contract with the Osage Oil Corporation to drill for the corporation a test well for oil and gas to a depth of 3,300 feet, unless oil or gas in paying quantities should be discovered at a shallower depth, and to furnish the derrick, rig, tools, water, machinery, fuel tanks, and all labor necessary to the completion of the well on the D. C. Clayton farm, being a part of the Lewis Knight survey in Jack county. The corporation agreed to furnish the necessary casing, casing shoes, and clamps, and to

use due diligence to place the same at the location of the well whenever needed by the contractor.

The contract further provided that the oil corporation should have the privilege of testing out any sands at a shallower depth than 3,300 feet, such testing to be done by McGuire; and for the time actually employed in testing such sands the contractor would be entitled to receive $50 per day, on a basis of 12 hours a day. The contract price for the drilling of the well was $4 per foot, aggregating $13,200 for the 3,300-foot depth.

It was further provided in the contract that, in the event the well should prove to be a dry hole, or nonproductive, then McGuire should plug the well and should receive for such work a consideration of $500.

The well was drilled to a depth of 3,315 feet, which, according to the contract price, amounted to $13,260. The oil corporation then mailed to McGuire its check for that sum, which check was accepted and collected by him. That check bore date of March 4, 1929, with this indorsement at the time of its receipt by McGuire: "It is hereby understood that this payment is made with the express understanding between H. B. McGuire and Osage Oil Corporation that all labor and material bills in connection with the drilling hereinafter referred to, have been paid. Endorsement of this check will constitute acknowledgment by H. B. McGuire as being in full settlement of all claims and demands of every kind and character growing out of or relating to the drilling and completion of our Clayton No. 1, on the D. C. Clayton farm southeast of Bryson, being a part of the Lewis Knight Survey in Jack County, Texas, excepting and reserving $500.00 to be paid for pulling the casing and plugging the well when same is required under the terms of our contract dated September 7, 1929—3,315 feet @ $4.00, $13,260.00."

Upon receipt of the check, McGuire wired the corporation as follows: "Check received. Thanks for same. Endorsement of check signifies full settlement but I have an item of testing sands ordered by Vacuum and Mr. Russell which I did not itemize yet but Russell understands. Will you allow charge as per contract and order when convenient to take up same. Never worry about claims or bills I always pay them all."

In reply to that telegram, the oil corporation wired McGuire as follows: "Surprised at your telegram concerning additional charges as Russell informed us you would not insist on same. Upon his return from Missouri will see you. Meanwhile write us full all of your demands."

There was no further communication between the parties respecting the check, but McGuire proceeded to collect the same, after adding another indorsement thereto without the knowledge or consent of the oil corpora-

tion, to the effect that he accepted the check with reservation of the right to demand further payment for testing sands that had been ordered by the corporation under the terms of the contract.

Thereafter the oil corporation mailed to McGuire another check for the sum of $685, bearing the following indorsement written on the back thereof:

"In full payment of all claims and demands whatsoever, including pulling of casing and plugging of our No. 1 Clayton, Lewis Knight Survey, near Bryson, Jack County, Texas, as provided in contract dates September 6, 1928 —$500.00, and including drilling of above well and testing of sands covered by our check No. 1351, dated March 4, 1929, but as bonus for testing Strawn sand series we allow ..............................$100.00

For bailing hole and mudding
February 20, 1929................  85.00

Total                           $685.00"

This check was held but not collected by McGuire.

This suit was instituted by McGuire to recover the sum of $1,590.30 as a balance claimed to be due on an itemized account attached to his petition. The account shows several items for testing sands, aggregating $972.50; also $500 for plugging the well and an interest charge of 6 per cent., amounting to $117.80, all aggregating the sum of $1,590.30.

The account also shows a charge of $13,260 for drilling the well to a depth of 3,315 feet, and a credit for the same amount paid by check. As noted, the account did not give credit for the second check which had been received by McGuire, aggregating $685.00, which the record shows McGuire received but had never collected, although he never offered to return the same to the drawer.

The defendant pleaded accord and satisfaction of all claims asserted by the plaintiff in his pleading. The basis of that plea was the acceptance by the plaintiff of the checks noted above with the indorsements thereon, which amounted to a contract in writing by the plaintiff for the full settlement of all claims and demands growing out of the contract. There was a further allegation that, before these checks were given and accepted by McGuire, there was a bona fide controversy between the parties with respect to the amount to be paid by the oil corporation to McGuire, and that the checks were given to settle those controversies.

In plaintiff's pleadings, he tendered back to the defendant the second check mentioned above, for the sum of $685, and he also pleaded a lack of consideration to support the purported contracts of settlement indicated by the indorsements on the two checks.

The case went to trial, and, in accordance with testimony introduced by plaintiff, the

jury returned a verdict showing the number of days employed by the plaintiff in testing the sands, and, upon the verdict so returned, the court entered judgment in favor of plaintiff for the sum of $1,387.50. The judgment recited a finding by the court that plaintiff was entitled to $500 for plugging the well and $887.50 for testing the sands.

Defendant has prosecuted this appeal and has assigned error to the action of the court in sustaining the plaintiff's exception to the defense of accord and satisfaction, indicated above; and in that ruling the court committed reversible error. There can be no room for doubt that the acceptance of the first check with the indorsement thereon constituted on its face a valid and binding agreement that the $13,260 covered by that check was a full settlement for every demand accruing to the plaintiff under the drilling contract, save and except the item for plugging the well; and that contract could not be varied by any testimony of a mere understanding or intention on the part of plaintiff to the contrary. Nor would a plea of failure of consideration be available to overcome the binding force and effect of that written agreement if it be true, as alleged in defendant's plea, that, before the check was given, there was a bona fide controversy between the parties as to the amount owing by the oil corporation to McGuire. Nor could McGuire's attempted restriction of the force of that indorsement attached to the check by him without the knowledge or consent of the drawer be given any effect.

Authorities almost without number support the foregoing conclusions, only a few of which will be cited, to wit: 1 Texas Jurisprudence, pp. 245–277; 1 R. C. L. p. 177; Little v. Allen, 56 Tex. 133; Simms Oil Co. v. American Refining Co. (Tex. Com. App.) 288 S. W. 163; Ferguson-McKinney Dry Goods Co. v. Garrett (Tex. Com. App.) 252 S. W. 738; Hunt v. Ogden, 58 Tex. Civ. App. 443, 125 S. W. 386, writ of error refused; Clopton v. Caldwell County (Tex. Civ. App.) 187 S. W. 400, writ of error refused.

It is also well settled that the acceptance of the check for $685 with the indorsement thereon with no offer to return the same is likewise binding upon the plaintiff as accord and satisfaction for the balance of plaintiff's claim which had not theretofore been settled by the first check. Nor could the plaintiff avoid the binding effect of the indorsement on that check by merely tendering the same back in his pleading. Especially is this true in view of the further allegation by the defendant that, after the check for $685 was received by the plaintiff, the defendant notified him to return the check if he did not accept it in final settlement and received no reply to that demand. Willis v. City National Bank of Galveston (Tex. Civ. App.) 280 S. W. 270; 1 Texas Jurisprudence, p. 282; Fuller

v. Kemp, 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785; Washington Natural Gas Co. v. Johnson, 123 Pa. 576, 16 A. 799, 10 Am. St. Rep. 553. Other authorities cited above with respect to the first check given by defendant are also applicable in principle to the second check.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded.

### On Motion for Rehearing.

The defendant's plea of accord and satisfaction was of considerable length, and all of it was stricken out on several special exceptions presented thereto by the plaintiff, all presenting the contention that, as shown by allegations in defendant's plea, there was an absence of consideration on the part of plaintiff sufficient to support an agreement of accord and satisfaction, in that the first paid to plaintiff in the sum of $13,260 was the satisfaction of a liquidated demand for drilling at the rate of $4 per foot, and therefore plaintiff's acceptance of that amount was not sufficient to bind him to a satisfaction of his claim for "rat-holing" and mudding and testing the sands.

As shown in the pleadings of both parties, the well proved to be a nonproducer, and under the terms of the contract sued on it then became the duty of plaintiff to plug it. He was in no position to demand any part of the price to be paid him until his contract was fully executed. According to allegations in the plea of accord and satisfaction, on or about February 21, 1929, the plaintiff presented to defendant his account for drilling the well to a depth of 3,315 feet, for which a charge was made of $4 a foot, and aggregating $13,260.

The account was as follows: "To drilling and completing footage to 3315. (8 in. hole), at $4.00 per foot, as per contract, $13,260.00. Discount extra footage made to that contract depth if you desire."

Accompanying that account, the plaintiff wrote the defendant a letter saying: "I am also enclosing my invoice on the drilling as per contract. The few day work items on rat-holing and testing sands and mudding the lower sands, I will work up and take up with you at an early date."

The letter further requested the defendant to make him an advance payment of the amount of the account; and in accordance with that request the defendant did, on March 4, 1929, mail to him the check for the sum of $13,260, recited in our original opinion, which plaintiff collected on March 6, 1929.

The plea contained the further allegation, in substance, that prior to the issuance of the check plaintiff claimed that he had made certain tests of sand and "rat-holing and reaming," for which he claimed compensation in excess of $13,200, the contract price for drill-

ing to a depth of 3,300 feet. That the defendant did not construe the drilling contract as giving plaintiff the right to compensation for "rat-holing and reaming," which was the principal item claimed by the plaintiff over and above the price of the drilling, and only a few hours had been consumed in testing the sand in the well, and for which defendant had told one of defendant's representatives no claim would be made.

There were further allegations to the effect that the $60 paid for drilling the additional 15 feet not required by the contract was made to cover all claims for "rat-holing and reaming" and testing sands. There were further allegations to the effect that the work of plugging the well, which was a part of the plaintiff's contract, was not done until April 2, 1929, and therefore the advance payment of $13,260 was made some 28 days before it was due, under the terms of the contract. And such payment, before plaintiff had the right to demand the same, was pleaded as a further consideration for the contract of accord and satisfaction, which was indorsed on the check for $13,260.

According to further allegations in defendant's plea, after the plaintiff had plugged the well, and on or about April 2, 1929, he mailed to defendant a statement of his account attached to plaintiff's petition, marked Exhibit B, which included an item of $500 for plugging the well, and also other items aggregating $972.50, and asked if defendant would consider the allowance to him of some amount on account for items other than for plugging the well; that thereupon the defendant mailed to plaintiff the second check mentioned in our original opinion for the aggregate of $685, with endorsement thereon. According to further allegations, plaintiff returned the same to the defendant, with the request that the check should include the additional amount of $972.50 for the other items stated in the account. On April 25, 1929, defendant returned the check to the plaintiff, who has retained it ever since.

There were further allegations that the defendant did not discover the alteration made on the original check by the plaintiff, in which he attempted to qualify his acceptance thereof, until June 25, 1929, and as soon as the discovery was made plaintiff was immediately advised of defendant's objection thereto; and on September 26, 1929, defendant advised plaintiff that, "if he does not want the $685.00 in final settlement, then we demand now a return of the check and the $13,260 above mentioned." But plaintiff failed and refused to return either of the checks, by reason of all of which plaintiff is estopped from denying the binding effect of accord and satisfaction pleaded by the defendant.

In this connection it is to be noted further that in plaintiff's second amended original petition, which was filed in September, 1930, he tendered and offered to return to defendant the check for the sum of $685, which he had received from defendant on April 25, 1929, with the further allegation that the same tender had been made to the defendant at the March, 1930, term of court.

The statement in our original opinion, to the effect that plaintiff had never offered to return that check, was incorrect, and the same is here now withdrawn.

In 1 Texas Jurisprudence, p. 253, par. 8, the following is said: "As with other contracts an accord to be enforceable must be supported by a sufficient consideration, but not necessarily an adequate one. If it (the consideration) is insignificant, or technical, merely, the contract will be sustained, provided the consideration is valuable, however slight, and will be deemed sufficient to support accord and satisfaction."

To the same effect see 1 R. C. L. pp. 184 and 187, pars. 14, 15, and 16, and on page 188, par. 19, it is said: "One of the most clearly sufficient considerations to support an accord and satisfaction is the payment of a less, to satisfy a greater, amount called for by a contract, before the same has matured. That payment before maturity is a good consideration has been universally recognized ever since."

Furthermore, in the account for services rendered by plaintiff, which is attached to his petition as Exhibit B, the item for drilling the well to a depth of 3,315 feet, for which a charge was made of $13,260, bears date February 19, 1929, and a credit given by defendant's check for that amount bears date March 6, 1929, while the item for plugging the well bears date April 2, 1929, thus showing that that check was in fact given some 28 days before it was due, under the terms of the contract as alleged in defendant's plea of accord and satisfaction.

Moreover, as shown already, the defendant's plea of accord and satisfaction contained allegations of a bona fide dispute of its liability to plaintiff of all the items charged in Exhibit B, attached to his petition, except the item of $500 for plugging the well which the defendant admitted owing and offered to pay, and which was covered by its second check for $685.

In Simms Oil Co. v. American Refining Company, 288 S. W. 163. 164, in an opinion by the Commission of Appeals, the following is said:

"Sufficient consideration for accord may inhere in or arise out of a dispute as to liability upon a liquidated claim. This presupposes that denial of liability, in whole or in part, is not merely factitious or mala fides. [Citing many Texas decisions.] The just rule, it seems to us, is that stated by Judge Fisher

in Franklin Ins. Co. v. Villeneuve, 25 Tex. Civ. App. 356, 360, 60 S. W. 1014, 1016.

" 'But if the one who is sought to be held liable in good faith urges a defense which he believes to be substantial, and which he claims will defeat the demand in whole or in part, and in good faith raises a controversy and dispute as to his liability, a settlement and compromise of the demand, based upon such contention, will not be disturbed.'

"This is so, we think, because existence of a dispute of that character affords a good consideration for the new agreement of accord."

In 1 Corpus Juris, pp. 551 to 553, it is stated that the rule to the effect that the acceptance by a creditor of a sum less than the amount due him in satisfaction of the whole debt is no bar to a recovery of the balance has no application to a disputed or unliquidated demand. The acceptance of a sum less than the amount of an unliquidated demand in full satisfaction is a bar to a recovery of the balance, even though it be shown on the trial of the case that the amount accepted is less than the amount to which the creditor was entitled. And the fact of the uncertainty of the claim, or honest difference between the parties as to what is due thereon, furnishes the consideration for the settlement. And on page 555 the following is said: "A claim, any part of which is in dispute, cannot be said to be liquidated within the rules governing an accord and satisfaction; and, according to the weight of authority, where it is admitted that one of two specific sums is due, but there is a dispute as to what is the proper amount, the demand is regarded as unliquidated within the meaning of that term as applied to the subject of accord and satisfaction. Or stating this proposition in the language of the Supreme Court of the United States (which perhaps more clearly expresses the idea intended to be conveyed), 'Where an aggregate amount is in dispute, the payment of a specified sum conceded to be due, that is, by including certain items but excluding disputed items, on condition that the sum so paid shall be received in full satisfaction, will be sustained as an extinguishment of the whole [Chicago, M. & St. P. R. Co. v. Clark, 178 U. S. 353, 20 S. Ct. 924, 44 L. Ed. 1099].' "

Those announcements are in accord with the opinion of the Commission of Appeals in Simms Oil Co. v. American Refining Co., 288 S. W. 163, referred to above. And in this connection it is to be noted that plaintiff's claim for drilling to a depth of 15 feet more than required by the contract was an unliquidated claim, as was also the claim for other services, such as rat-holing, mudding, and testing sands. See 1 Corpus Juris, p. 561.

Appellee insists that the acceptance of the second check for $685 could not support the defendant's plea of accord and satisfaction, since that check was never collected, and in plaintiff's pleadings it was tendered back to defendant, as noted above.

Washington Natural Gas Co. v. Johnson, 123 Pa. 576, 16 A. 799, 801, 10 Am. St. Rep. 553, cited in our original opinion, was an action brought by the lessor for a breach of a covenant contained in an oil lease. The lease contained the provision that the lessor should receive a royalty of one-fourth of all oil produced and $800 per annum for each gas well operated, if gas was found in sufficient quantities to be utilized. The lease further provided that the lessee should drill and complete one well within six months of the date of the lease, and should begin a second well four months after the time of the completion of well No. 1. The lessee drilled one well which produced gas in sufficient quantities to be utilized, and then assigned the lease to Robbins, who in turn assigned it to the Washington Natural Gas Company after the time had expired for the beginning of a second well. The second well was never drilled, and this action was brought to recover damages for breach of the covenant to drill that well; and there was a claim of damages of $800 upon the theory that a second well would have produced gas in paying quantities, the same as the first well. In the trial court a judgment was rendered in favor of plaintiff which was reversed by the Supreme Court of Pennsylvania. It appeared that the breach of covenant to drill the second well occurred while the lease was held by Robbins, and not while the assignee, who was defendant in the case, owned it; and therefore the assignee was not responsible in damages for the breach. After reaching that conclusion, the court had this to say:

"There is another reason for reversing this case brought to our attention by the eighth assignment of error. The check for $650 sent by the treasurer of the gas company to the attorney of the lessors was expressly stated to be in full for the Johnson lease from May 1, 1887, to May 1, 1888. A receipt was returned for the amount, stating that it was received for rental of well No. 1 on Johnson lease. The treasurer promptly returned the receipt, saying 'the $650 was sent, and so stated, in full for Johnson lease,' and requesting its return if not accepted as sent. It was not returned. The party paying money has the right to direct its appropriation. It was the plain duty of the lessor to accept the check for the purpose for which it was offered, or to return it. Attention was again drawn to the subject by the treasurer in a note dated 21st July, asking the return of the check unless accepted as in full payment of all rents due on the lease. The refusal to return it after this explicit direction ought to be regarded as an election to accept it for the purpose for which it was offered, viz., as payment in full for all rents due upon the lease."

It thus appears that the facts of that case are on all fours with the facts of this case with respect to acceptance of the second check for $685, which appellant sent to appellee. Furthermore, we believe that upon a trial of the issues a jury would be warranted in finding that the plaintiff retained the $685 check for an unreasonable length of time after he received it the second time with the request from the defendant to return it and the other check if he declined to accept it.

In 1 Corpus Juris, p. 563, it is said: "Where a check is sent in full settlement for a disputed or unliquidated demand, delay for an unreasonable length of time to return the check will amount to an election to treat it as a full settlement."

And, although the check was never in fact collected, yet it was in plaintiff's possession and ownership during all the time he held it. During that time he could have collected it, which was a valuable right in him, and it may be well presumed that the drawer of the check kept money in the bank sufficient to meet it should it be presented for payment; thus surrendering the valuable right of use of the funds while the check was outstanding. See, also, note of decisions in L. R. A. 1918C, page 162.

Accordingly, the motion for rehearing is overruled.