## Borland's Appeal.

1. An auditor to distribute the proceeds of a sheriff's sale cannot go behind a judgment to inquire into its regularity or its merits.

2. An auditor may receive testimony to show that a judgment has been paid or otherwise satisfied.

3. H. became security for A.'s rent, $700 per annum for four years, and received a bond from A. in $2000 conditioned that in default of any payment of rent, H. might immediately issue execution on the judgment to be entered on the bond " for the whole amount of said obligation." *Held*, that H. had no right to execution for more than was necessary for his indemnity.

4. A. having made default in the second quarter's rent, H. issued execution for the whole penalty; he purchased the leasehold at the sheriff's sale, and the landlord was paid all the rent then due out of the proceeds of sale. *Held*, that H. was not entitled to any part of the proceeds of the sale.

5. By his purchase H. became liable for the subsequently accruing rent so long as he continued assignee.

6. H. might be relieved at any time by assigning to another.

7. H.'s liability arose from privity of estate, not privity of contract.

8. The right to a thing personal once suspended is gone.

November 8th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the District Court of *Allegheny county* distributing the proceeds of the sheriff's sale of the personal property of Alpert & Kohler, No. 190, to October and November Term 1870.

The fund for distribution arose from the sale of the defendant's personal property, under an execution at the suit of John Huckenstein and Jacob Eisenbeis; the fund having been paid into court was referred to J. H. Baldwin, Esq., as auditor, to report distribution. He found the facts as follows:—

On the 1st of July 1869, Alpert & Kohler leased of Walter's heirs the premises No. 38 Market street, for the term of four years and nine months at the annual rent of $700, payable quarterly. For the payment of this rent, and the performance of the other conditions of the lease, John Huckenstein and Jacob Eisenbeis became sureties, and to protect themselves took from the defendants a judgment-bond, dated July 13th 1869, in the penal sum of

[Borland's Appeal.]

$2000, conditioned "that if Alpert & Kohler shall pay, &c., to the heirs of P. Walter, deceased, the annual rent of $700, payable quarterly on the first days of October, January, April and July of each year, as stipulated and agreed in their lease, &c., and in default of any quarterly payment of said rent, the said Huckenstein and Eisenbeis may immediately issue execution for the whole amount of this obligation."

On the 1st of January 1870, one quarter's rent, amounting to $175, became due; on this the defendants had paid only about $30, and the plaintiffs on the 17th of January 1870, entered judgment on their bond, and issued execution for the penalty of $2000, attorney's commissions, &c.

To January Term 1870, Borland had brought suit against the defendants, for a claim amounting to $612.08; the defendants filed an affidavit of defence to $247.20 of this claim, averring that goods to that amount had been received from Borland to be sold on commission and remained unsold. Borland took judgment for the balance on the 25th of January, and issued execution. The plaintiffs' writ and Borland's came to the sheriff's hands on the same day. The sheriff levied on the leasehold, together with the fixtures and stock of the defendants; Borland gave notice to the sheriff that he claimed the goods held by the defendants on commission; a rule to interplead was entered, when the parties agreed that these 'goods should be sold with the defendants' other property, and the proceeds of the whole distributed as the court should direct. At the sheriff's sale, the plaintiffs purchased the leasehold for $5. The landlords claimed and received the rent " to the day of sale," out of the proceeds.

After finding these facts, the auditor further reported:—

" What then was the effect of the purchase of the lease by the plaintiffs? Under ordinary circumstances, such a purchase would be equivalent to a declaration, that they considered the lease worth the rent reserved, and a bonus of five dollars besides, and I cannot see that the fact that they were sureties on this lease, and therefore may ultimately become liable to some loss or damage if they failed to purchase it, varies the condition or effect of the purchase. They chose to become the purchasers under all the conditions of the lease, knowing that thereby they became sureties of themselves and liable to the landlord directly for the performance of all the stipulations in the lease contained. It may be, as was proven, that rents on Market street are now going down. It may also be that before this lease expires, they will go much higher. In either event it seems to me that the plaintiffs, by purchasing this lease, have assumed the risks, and the question is not now open for discussion. But it is said this view of the case cannot be maintained, because it is questioning the validity of the judgment under which the fund is de-

[Borland's Appeal.]

rived. But I apprehend that where it can be gleaned *from the record itself* that there is nothing due upon the judgment, and that the parties have, by their own acts, established such relations as will for ever preclude anything from becoming due and payable thereon; it will not be considered an attack upon the judgment to pronounce it virtually satisfied and to award the fund to the unpaid claimants.

"It is also claimed on the part of Mr. Borland, that he is entitled to the proceeds of the second sale, made under the agreement of counsel as recited—to wit: the sum of $102.75—as the owner of the goods sold. If I am right in supposing that the purchase of the lease by the plaintiffs, and the payment of the rent due, from the proceeds of the sale by the sheriff, work an extinguishment of the plaintiffs' claim, the only parties interested in this question are the claimant and the defendants; and as between these parties, it may at once be said that the defendants have no right to question what themselves have sworn to be the case, viz.: that these goods belonged to Borland, having been received by them on commission and remaining unsold, and that Borland is entitled to this part of the fund on that ground." * * *

The auditor, after deducting costs and expenses from the fund in court ($423.25), made the following distribution of the balance:—

To Borland, proceeds of sale of goods claimed by him, less its share of expenses . . . . . . $82.75
To same, on account of his execution . . . 255.50

The plaintiffs excepted to the whole distribution made by the auditor. The court sustained the exceptions, and decreed the whole sum, $338.75, to the plaintiffs.

Borland appealed to the Supreme Court, and assigned this decree for error.

*S. C. Schoyer*, for appellant.

*J. Mellon*, for appellees.—The plaintiffs' bond being for indemnity he had the right to its fruits: McCann *v.* Farley, 2 Casey 173. The auditor had no jurisdiction over the judgment: Horner *v.* Hower, 3 Wright 126; Housekeeper's Appeal, 13 Id. 141; Dyott's Appeal, 2 W. & S. 557; Lowber's Appeal, 8 Id. 387; Kelly *v.* Eichman, 3 Wharton 422.

The opinion of the court was delivered, January 3d 1871, by

SHARSWOOD, J.—It is certainly true that an auditor appointed to distribute the proceeds of a sheriff's sale cannot go behind the judgment of a court of competent jurisdiction either to inquire into its regularity or its merits; but it is equally true that he is not precluded from receiving testimony to show that since its ren-

dition, it has been paid or otherwise satisfied: Estate of J. B. & C. W. Dyott, 2 W. & S. 557. It must be conceded that the judgment entered in favor of Huckenstein and Eisenbeis, upon Alpert & Kohler's bond conditioned " that in default of any quarterly payment of rent the said Huckenstein and Eisenbeis may immediately issue execution for the whole amount of the said obligation," upon the forfeiture of the bond became a security to indemnify them, and that they were entitled to all the indemnity such an instrument could legally afford them. They had no right, however, to take execution for more than was necessary to their indemnity: McCann v. Farley, 2 Casey 175. At the time they sued out execution they may have had a right to collect the full amount of the penalty of the bond and hold it as security to indemnify them from the claim of the landlord for the accruing rents up to the time of the expiration of the lease. No question has been made as to that here. But if at the time of the report of the auditor and award of distribution it appears that all liability, as sureties, for the rent is ended—for example, that the lessor has accepted a surrender of the lease—surely they have no claim upon the fund; they cannot prevent it from going to other creditors of the tenant. Now such is the case here, as it appears from the facts found by the auditor. The arrears of rent up to the day of sale were paid out of the fund. At the sale Huckenstein and Eisenbeis purchased the leasehold, they became assignees of the term, and liable as such assignees for the subsequently accruing rent. They had possession and enjoyment, or what is the same thing, the right to possess and enjoy the demised premises: 4 Kent Com. 96, 97; Woodfall's Landl. and Ten. 166, 167. It is true that this liability will continue only so long as they continue assignees. They may get rid of it at any time hereafter by an assignment to another, even to a beggar. It is founded not upon privity of contract but upon privity of estate, and lasts only so long as that lasts: Ibid. This seems to be the point upon which this controversy hinges. Huckenstein and Eisenbeis maintain that the rental value of the premises may hereafter fall, and they may thus be subjected to a loss ultimately for which they are entitled to indemnity. It must be agreed, however, that there is no legal liability now either *in presenti* or *futuro.* As long as things continue as they now are Huckenstein and Eisenbeis can never call upon Alpert & Kohler to indemnify them for any payment of rent they may be compelled to make. In consideration of the assignment of the lease, they have taken that upon themselves as principals. Waiving the consideration of the question whether upon an assignment of the lease by them hereafter, the only mode in which they can shake off this liability, their claim to indemnity would revive—which would seem contrary to the maxim that a right to a thing personal once suspended is gone for ever—yet

surely it is not equity to put an indefinite amount of money belonging to the debtors, and rightfully to be paid to their other creditors, into the hands of Huckenstein and Eisenbeis to hold as indemnity against so remote a contingency.

We are of the opinion that the distribution reported by the auditor was right, and the exceptions ought to have been dismissed and a decree made conformably thereto. It is a case, however, in which we think the costs of this appeal should be paid from the fund.

> Decree reversed, and record remitted to the court below that a decree may be there made in conformity with this opinion.