# Jesse Goss, Appellant, *v.* The Woodland Fire Brick Company, Limited.

*Landlord and tenant—Privity of estate—Assignment of leasehold.*

Where a lease contains no stipulation against assignment by the lessee one acquiring the leasehold by assignment is fixed with notice of its covenants and takes the estate of his assignor cum onere; his liability grows out of privity of estate and closes when the privity ceases; while he holds the estate and enjoys its benefits he bears its burdens but he lays down both the estate and its burdens by an assignment, even though his assignment be to a beggar.

*Landlord and tenant—Assignment of leasehold—Evidence—Fraud.*

A lessee of a leasehold estate, unfettered as to assignment, having assigned to an insolvent, evidence is inadmissible, as to his knowledge of such insolvency and intent in assigning, for the purpose of showing that the assignment is fraudulent and void as against the lessor seeking to recover for royalties reserved in the lease.

168      GOSS, Appellant, v. BRICK CO.

Argued Feb. 11, 1897.   Appeal, No. 36, Feb. T., 1897, by plaintiff, from judgment of C. P. Clearfield Co., Sept. T., 1895, No. 225, on verdict for defendant.   Before WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ.   Affirmed.

Assumpsit to recover royalties due on a lease.   Before GORDON, P. J.

Plaintiff in 1887 owned a tract of land in Clearfield county underlaid with a deposit of fire clay, and by contract he leased the land with mining rights to one Troxell, without any limitation on the right of the lessee to assign the leasehold.   By various assignments the leasehold passed into possession of the defendant company, which, after operating the mine for some time, during which period it paid royalty or rent to the plaintiff, on the 27th of October, 1894, assigned the same to one Aaron Peters who at once took possession of the property, and defendant withdrew its possession and subsequently had nothing more to do with the mining operations or leasehold estate.

The court directed a verdict for defendant on which judgment was entered.   Plaintiff appealed.

*Errors assigned* were (1) overruling plaintiff's offer of evidence which proposed to show by witness on the stand that defendant had consulted counsel and made the assignment with a view to avoiding the payment of royalty and to prevent plaintiff from collecting the same from defendant company; (2) overruling plaintiff's offer which proposed to show by witness on the stand that Aaron Peters was insolvent, and that the purpose of assigning the leasehold to him was to prevent Jesse Goss from collecting royalty from the defendant company; (3, 4) rejecting offers of like purport.

*David L. Krebs*, with him *William Paterson*, for appellant.— The several assignments of error raising but a single question may be properly discussed together.   The entire defense is based on the validity and legal effect of the transfer, and under the statute of 13 Elizabeth, chap. V, (vide Roberts Digest of British Statutes, in force in Pennsylvania), page 295, this transfer will not relieve the defendant company.   See also Walker v. Physick, 5 Pa. 193.

On the question of fraudulent intent, see Academy of Music
v. Smith, 54 Pa. 130.

*Thomas H. Murray,* with him *Allison O. Smith,* for appellee.—
The legal effect of the execution, acknowledgment and registry
of the deed of assignment from defendant company to Peters
under the fifth section of the Act of May 28, 1715, 1 Sm. L. 95,
was to vest in the grantee the immediate right: Blight v.
Schenck, 10 Pa. 285 ; Caldwell v. Fulton, 31 Pa. 475 ; Eckman
v. Eckman, 68 Pa. 460.

The character of testimony necessary to establish fraud to
affect the express terms of a deed is well defined in Thorne,
McFarlane & Co. v. Warfflein, 100 Pa. 526.    To the same effect
is Philips v. Meily, 106 Pa. 536 ; Hoffman v. Railroad, 157 Pa.
174.

It is well settled that when an assignee of a lease lays down
the estate he lays down its burdens even though the assignment
be to a beggar: Negley v. Morgan, 46 Pa. 281; Borland's
Appeal, 66 Pa. 470 ; Washington N. G. Co. v. Johnson, 123
Pa. 576.

OPINION BY ORLADY, J., March 17, 1897 :

On June 30, 1888, Jesse Goss leased, demised and granted
unto Zeigler & Martyn, their executors, administrators and as-
signs, by a written agreement, duly executed and recorded, all
the stone and mineral generally known as fire clay, including
all its different kinds and varieties, together with all the stone,
clay and other mineral underlying the entire surface of a tract
of land containing fifty-one acres, described by courses and dis-
stances, for and during the term of twenty years then next ensu-
ing.    The manner of operation, payment of royalty, rights of
the lessees to purchase during the term, or renew at its expira-
tion, provisions for ownership of improvements made on the
property, and forfeiture under violations, were fully set out in
the agreement, which was without limitation of the lessees'
right to sell, transfer and assign their interest in it.

On September 6, 1888, Martyn assigned all his interest in
the lease to J. M. Troxell.    On October 26, 1888, Zeigler as-
signed all his interest in the lease to the same person, both of
which assignments were acknowledged and placed on record.

The interest in the leasehold estate, the improvements and the personal property necessary for its operation as a fire clay works, then owned by Troxell, were taken in execution by the sheriff of Clearfield county and sold to the Woodland Fire Brick Company, Limited, on March 4, 1891.

This purchaser took possession of the premises after the sale, mined clay, paid the royalty thereon and performed all the conditions mentioned in the lease until October, 1894. On October 27, 1894, the Woodland Fire Brick Company, Limited, sold, assigned, transferred and set over to Aaron Peters all its rights, title, and interest in and to the lease and messuage therein described and term yet to go, for the consideration of $25.00 which was paid, and possession of the property surrendered by the appellee and delivered to Peters; after which date the mines were not operated. This action of assumpsit was brought by Jesse Goss to recover the royalties due for the months following October, 1894.

On the trial, when the secretary for the limited partnership was on the stand, being called by the defendant, the plaintiff proposed to ask on cross-examination, " whether the company did not consult counsel how it or they could get rid of the liability to pay the royalty under this lease to the plaintiff, and that they were advised to transfer it to someone; and to show further by the cross-examination of this witness that the real purpose of the transfer was to avoid payment of the royalty and to prevent Mr. Goss, the plaintiff, from collecting the same from the defendant company." (First assignment of error.)

" And whether or not he did not know at that time, and whether the company did not know that Aaron Peters was insolvent, and whether the purpose of assigning this lease to him was to prevent Jesse Goss from collecting his royalty from the defendant company, and also to ask him the further question whether the defendant company did not assign the lease to Aaron Peters for the reason that they wanted to avoid further payment of royalty to Jesse Goss, the plaintiff, under the lease, this for the purpose of showing that the assignment or transfer to Aaron Peters is fraudulent and void as against Jesse Goss." (Second assignment of error.)

By other witnesses plaintiff offered to prove " that on the 27th of October, 1894, when the defendant transferred this lease to Aaron Peters, the leasehold interest was worth a much

larger amount of money, and that L. A. Ross, a stockholder of the defendant company, and its mine superintendent, tried to sell the leasehold interest to witness on more than one occasion at a large price, this for the purpose of showing, in connection with the proof already in the case, that there was a large amount of clay in sight, that the transfer on the 27th of October, 1894, was in fraud of Jesse Goss, the plaintiff, and intended only to defeat and hinder him from collecting further royalty from defendant, and to avoid any further liability under the lease under which they had taken possession and enjoyed the property from March 4, 1891, to the 27th of October, 1894." (Third assignment of error.)

And by same witness " that a short time prior to the transfer of the lease to Aaron Peters, the defendant company tried to sell it, with the improvements, etc., to witness at the sum of $8,000, and subsequently for $5,500, and in fact the interest was worth much more than $25.00, the amount for which it was ostensibly transferred to Peters; that at the time of the transfer to Peters he did not own any real estate, and was largely in debt, and in fact was insolvent, and also to prove, if it has not already been proven, that Peters was an employee of the defendant company at the time of the transfer to him, and is now an employee. This with the other testimony already in the case is offered to prove that the assignment by the defendant company was intended to avoid the further payment of royalties to Goss, the plaintiff, and prevent him from collecting the same from them, and to show that the transaction is fraudulent in law and void." (Fourth assignment of error.)

The several offers were met by the defendant, first, as incompetent and irrelevant; second, as not competent or material for the purpose stated, and were excluded on the following ruling by the court: " I am of the opinion that under the authority of Borland's Appeal, 66 Pa., 470, Washington Natural Gas Company v. Johnson, 123 Pa. 576, and Fennell v. Guffey, 139 Pa. 341, the proposed evidence is not admissible. The defendant's liability is not by virtue of any privity of contract between them, but is one based solely upon the privity of estate which arises upon their acquisition of title to the leasehold estate in question by purchase at sheriff's sale and possession taken in pursuance thereof. The liability continued only during defend-

ant's ownership and possession, and ceased when they parted with the title. Such being the law the purpose of parting with the title is immaterial. There is no allegation of actual fraud being perpetrated upon the plaintiff by defendant. The proposed evidence does not in my opinion constitute fraud. The claim in suit being for rent or royalty accruing after defendants had parted with their title, the proposed evidence is immaterial."

The royalty named in the lease was 25 cents for each and every ton of 2240 pounds weight merchantable fire clay, and by one of the covenants it was provided that the parties of the second part "shall pay the aforesaid royalty during the first year of the operation of this indenture on at least 3,000 tons of fire clay and thereafter each year on at least 6,000 tons."

The sole question under the offers was as to the character of evidence suggested by them to make the appellee liable for the royalty on the minimum mentioned after the lease had been transferred and possession delivered.

The purpose, as disclosed, was to show that the transfer was for the purpose of hindering and delaying Goss in the collection of royalty, and that it was fraudulent in law and void.

The lease when executed was left open for transfer without notice to or assent of the lessor, and the assignment to Troxell or the sale of his interest by the sheriff to the appellee did not change in any way the extent of any covenant under the lease. There was no limitation or restriction as to who should be assignee or purchaser of the leasehold interest. Its value, manner of transfer or continuing liability of any one in the line of title, performance of any condition by anyone acting under it, after the transfer, was not mentioned in the lease, so that the price paid, the personnel of the purchaser, the amount of fire clay in place, its value, or the motive of the sale was not material to the inquiry before the court.

The appellees were not required to remain the owners until the expiration of the term, nor could the appellant limit their right to sell their interest, as there was no privity of contract between them. Assuming that the price was low, that there was plenty of unmined clay, that the purchaser had been their employee, that they desired to sell the property for any reason sufficient to a manufacturer's mind, it would not follow that the

act was fraudulent in law, because it was profitable to operate at another place and abandon this, or that they could not legally sell that which was not in any way limited by restrictions. The offers did not suggest that the transfer was a trick or artifice by which appellee retained any title or interest in or to the leasehold after the transfer to Peters, or was fraudulent in fact.

The danger of possible injury from this source could have been avoided by providing for such a contingency in the writing itself.

The measure of liability is distinctly stated in Washington Natural Gas Co. v. Johnson, 123 Pa. 576, " Acquiring the leasehold by an assignment of the lease he is fixed with notice of its covenants, and he takes the estate of his assignor cum onere. But as his liability grows out of privity of estate, it ceases when the privity ceases. If he had assigned before the time for performance, his liability would have ceased with his title, and liability would have attached to his assignee by reason of privity of estate, and so on toties quoties. Each successive assignee would be liable for covenants maturing while the title was held by him because of privity of estate, but he would not be liable for those previously broken or subsequently maturing, because of the absence of any contract relations with the lessor; while he holds the estate and enjoys its benefits, he bears its burdens, but he lays down both the estate and its burdens by an assignment, even though, as is said in some of the cases, his assignment be to a beggar: Negley v. Morgan, 46 Pa. 281; Borland's Appeal, 66 Pa. 470."

It is well settled law that covenants to pay rent or royalty run with the land, and the assignee of a lease is liable for the payment of all rents and royalties which accrue while he holds the assignment of the lease. It is admitted in this case that all royalties accruing during the time the leasehold estate was held by the appellees were promptly paid, and all conditions were performed by them, and under the above decisions. the evidence was properly excluded, the assignments of error are overruled, and the judgment is affirmed.