Samuel Watt *v.* The Equitable Gas Company, Appellant.

*Landlord and tenant—Covenants running with land—Assignment of lease.*

Covenants to pay rent and royalty run with the land and the assignee of a lease is liable for the payment of all rents and royalties which accrue while he holds the assignment, but not after an assignment by him.

*Oil and gas lease—Covenants maturing after assignment by assignee.*

An assignee of an oil and gas lease is not liable to the lessor upon a covenant of the lessee to drill the well upon the demised premises, when the covenant matures after he had parted with his interest by assignment to another.

Argued April 27, 1898. Appeal, No. 160, April T., 1898, by defendant, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1895, No. 11, on verdict for plaintiff. Before WICK-HAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Reversed.

Assumpsit. Before KENNEDY, P. J.

It appears from the record that the form of action was assumpsit brought to recover an annual sum under an oil and gas lease of which the defendant became assignee and which it subsequently assigned to others.

The essential facts sufficiently appear in the opinion of the court.

The court directed a verdict for plaintiff. Verdict and judgment for plaintiff for $191.52. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant. (2) In giving binding instructions for plaintiff.

*Jno. McCleave* of *Watson & McCleave,* for appellant.—The annual payment of $171 for which the verdict was rendered, was certainly not payable until the 18th of July, 1895, and after the defendant had parted with its interest: Menough's App., 5 W. & S. 432; Boyd v. McCombs, 4 Pa. 146.

Neither could the annual sum received be apportioned to any fractional part of the year: 1 Pingrey on Real Property, 136.

Where the breach of the covenant for which the suit is brought, occurred subsequent to the time at which all privity of estate between the plaintiff and defendant had been destroyed, it has been the law for at least 200 years that in such cases the defendant cannot be held for such subsequent breach: Pitcher v. Tovey, 1 Salkeld's Rep. 80; Lekeux v. Nash, 2 Strange's Rep. 1221; Taylor v. Shum, 1 Bosanquet & Puller's Rep. 21; Odell v. Wake, 3 Campbell's Rep. 394; Fennell v. Guffey, 139 Pa. 341.

The case is ruled by Washington Gas Co. v. Johnson, 123 Pa. 576, 591.

*William H. Sponsler,* with him *Joseph R. McQuade,* for appellee.—This is a common stipulation found in contracts to do a certain thing within a certain time and, where it fulfils the essentials of such a covenant, has always been pronounced liquidated damages: Hall v. Crowley, 87 Mass. 304; Folsom v. McDonough, 60 Mass. 208; Young v. White, 5 W. 460.

But a case wholly in point and conclusive of this question is Powell v. Burroughs, 54 Pa. 329.

But should this court look at the stipulated sum as rent and not liquidated damages, it does not help the appellant: Nesbit v. Godfrey, 155 Pa. 251; Double v. Light Co., 172 Pa. 388.

OPINION BY W. W. PORTER, J., November 14, 1898:

On January 18, 1887, the plaintiff executed a writing giving the right to drill and operate for oil and gas upon his farm to J. T. Hoey, his heirs and assigns, and containing the following provision: " Operations upon the above named premises shall be commenced and one well completed within six months from the date hereof, in case of failure to complete well within said time, the party of the second part agrees to pay the party of the first part for such delay, the sum of $171.00 per annum from the time of [for] completing such a well as above specified, payable directly to the party of the first part." On April 11, 1887, Hoey assigned to George Trautman and his assigns. On April 6, 1889, Trautman assigned to the defendants. No well was drilled and the defendants never entered upon the premises. On May 2, 1894, the plaintiff sued the defendants to recover the accrued annual sums of $171. On August 20,

1894, the defendants assigned to A. E. Fretts. On October 24, 1894, the defendants settled the suit above mentioned by the payment of $451.64.

By the terms of the writing the annual sum, payable on failure to drill a well, was due on the 18th of July of the year then completed. The present action was brought August 5, 1895, to recover the sum of $171, falling due July 18, 1895.

The defense set up is that the assignment to Fretts by the defendants on August 20, 1894, relieved the defendants from the payment of the amount sued for, inasmuch as it was neither due nor demandable until July 18, 1895, eleven months after the defendants had parted with their title and that, therefore, the breach upon which the suit is based, occurred long subsequent to the time at which all privity of estate between the parties here litigant had been destroyed.

In the plaintiff's statement the claim is described as one for rent, but in the argument it is explained that the term used is one simply of convenience, and is not definitive of the character of the claim. If it be properly rent or royalty, then is the case determined against the plaintiff on the authority of Goss v. The Brick Co., 4 Pa. Superior Ct. 167, where it was held that " covenants to pay rent or royalty run with the land, and the assignee of a lease is liable for the payment of all rents and royalties which accrue while he holds the assignment." See also Fennell v. Guffey, 155 Pa. 40 and s. c., 139 Pa. 341. If the claim be for rent or royalty, it did not accrue or become payable while the defendants held title to the lease.

In his argument the plaintiff contends, and with considerable force, that the claim is not for rent but for damages for the breach of the covenant to sink a well, and that the amount of the damages is fixed by the parties, by the terms of their agreement, at $171 for each year in which the breach is committed.

If the claim be for damages, the case is brought within the ruling of the Supreme Court in Washington Gas Co. v. Johnson, 123 Pa. 576. There the action was one for damages for failure to sink a second well within a limited time. The action was against an assignee of the lessee. True, the amount of the damages was not fixed by the terms of the agreement, but this fact does not distinguish the case from the one at bar,

in principle. It was there held that the original lessees continued liable under their original covenant, notwithstanding their assignment of the lease; and that the assignee, who was in possession under the lease when the time arrived for the performance of the covenant to sink a second well, was also liable because of the privity of estate which arose upon his acceptance of the assignment. "But," said Mr. Justice WILLIAMS, "as his liability grows out of privity of estate, it ceases when the privity ceases. If he had assigned before the time for performance, his liability would have ceased with his title, and liability would have attached to his assignee by reason of privity of estate, and so on toties quoties. Each successive assignee would be liable for covenants maturing while the title was held by him because of privity of estate; but he would not be liable for those previously broken or subsequently maturing, because of the absence of any contract relations with the lessor. While he holds the estate and enjoys its benefits, he bears its burdens, but he lays down both the estate and its burdens by an assignment, even though, as is said in some of the cases, his assignment be to a beggar."

Applying this statement of the law to the facts of the present case, the defendants were not liable for the results of the breach of the covenant to sink the well. The breach did not occur while the defendants held title, but at a time when the lease was held by an assignee who had taken his assignment long anterior to the breach.

We are of the opinion that the first assignment of error must be sustained, and therefore reverse the judgment of the court below at the cost of the appellees.