Kenneth E. Curran *v.* Bray Wood Heel Co., Inc.

(68 A2d 712)

May Term, 1949.

Present: Sherburne, C. J., Jeffords, Cleary and Adams, JJ.

Opinion filed October 4, 1949.

22

*Lee E. Emerson* for the defendant.

*Witters & Longmoore* and *Clarence V. Akley* for the plaintiff.

ADAMS, J. In this action the plaintiff seeks to recover from the defendant a balance due for lumber and trucking of the same. The defendant pleaded the general issue, accord and satisfaction, payment and the statute of frauds. Trial was by jury with verdict and judgment for the plaintiff. The case is here upon the defendant's exceptions. Because of our view of the matter, we will first consider the exceptions to the denial of the defendant's motion for a directed verdict.

Viewed in the light most favorable to the plaintiff his evidence tended to show the following facts:— The plaintiff and defendant entered into an oral contract in April, 1945, whereby the plaintiff was to deliver from his mill in Littleton, N. H. to the defendant's mill at Orleans, Vt. a certain type of lumber at an agreed price of $50.50 per M., plus $6.00 per M. for trucking and loading; the scale to be by plaintiff at his mill end; some of it was to be stacked and dried at an additional price of $3.00 per M. It was to be paid for weekly by check. The plaintiff started delivery in April, 1945, and between then and the latter part of January, 1946, had delivered over one million feet. The defendant tallied or estimated the lumber as delivered at its mill and paid for it weekly by check in accordance therewith. Early in February the plaintiff noticed a spread between the tallies and by certain computations arrived at a difference in his favor of 6337 feet which had occurred during the last week in January and which was approximately one truck load and which he claimed the defendant had not paid for. There

was also a dispute over some lumber that the plaintiff had sold to one Barber at St. Johnsbury which the plaintiff claimed the defendant had received and should pay for. After this controversy arose the plaintiff stopped delivery except for one truck load delivered in March. After the dispute the plaintiff had several talks with three of the Brays who were officers of the defendant corporation in an attempt to settle their differences without result. On July 20th, 1946, the plaintiff sent the defendant an itemized statement setting forth debit items amounting to $925.01; credit items of $448.10 and a balance due of $476.91. This did not include any item for the Barber lumber. It did include an item for 6337 feet and trucking and loading of the same. On this statement he said the account was considerably past due and asked for payment before the end of the month. On July 29th the defendant wrote the plaintiff as follows:— "Enclosed please find our check for $118.87. This is the amount due according to our records, which we have carefully checked and is arrived at as follows:" then followed an itemized statement of the account with the same debits and credits as on the statement sent by the plaintiff omitting the item of 6337 feet. This letter had a summary at the bottom of debits of $566.97 and credits of $448.10. The credits were subtracted from the debits showing a balance of $118.87 and opposite this figure was "check 7/29". There was enclosed with the letter a check of the defendant dated July 29th, payable to the order of the plaintiff, drawn on The Barton Savings Bank & Trust Co. for $118.87; it had a stub attached to it upon which was printed, "By endorsement this check is accepted in full payment of the following account"; below that was written, "Final settlement as per letter 7/29/46

566.97
448.10
———
118.87

in printing "total of invoices"    118.87
in printing "amount of check"    118.87"

The check and letter were received by the plaintiff a few days after July 29th. What happened between the plaintiff and the Brays in regard to the check and letter after that comes from the lips of the plaintiff and we must take his version of it although the Brays denied that he ever saw them about it. He testified that

after he had received the check he went to the defendant's office with it for the Brays to look at and told them the statement wasn't complete; that the check stated "final settlement as per letter" and that the letter didn't include all the items; that the check wasn't correct and he wouldn't cash it with "final settlement as per letter" written on it; that he didn't offer to return it and took it with him when he left; that he didn't know how soon after he received the check this took place; that he then put the check in his files and did nothing further about it until he gave it to an attorney in N. H. in April, 1947, when he asked him to collect his account against the defendant and that he never saw the check after that until he saw it in court. On April 10th this attorney wrote the defendant for the plaintiff that he had the plaintiff's account against it for collection amounting to $661.04 which included the check for $118.87 on which was marked "Final payment" and which had not been cashed for that reason. Nothing further was done until this suit was brought on December 24th, 1947. No objection was ever made that the check was an improper method of tender of the amount the defendant claimed due. It was never cashed and never tendered back to the defendant until just before the close of the evidence on the third day of the trial, March 19th, 1948, when the plaintiff's attorney tendered it to the defendant "for cancellation". The tender was refused. The Court then impounded it with the County Clerk. The defendant objected to the Court allowing it to be tendered and to the order impounding it and saved exceptions. During the trial the defendant presented testimony that the check would be paid if presented to the bank.

The 5th, 6th and 7th grounds of the motion for a directed verdict for the defendant may be considered together. They were in substance that the check for $118.87 was tendered in full and final payment of the account and difference between the parties; that there was no protest as to the medium of payment and it was retained by the plaintiff an unreasonable length of time and as a matter of law there was an accord and satisfaction and payment of the account.

The question of accord and satisfaction may be one of fact or of law. Where the evidence leaves no room for opposing inferences it is one of law. *Dow* v. *Cheney Piano Action Co.*, 104 Vt 350, 160 A 274.

It is our well settled rule that, if one who has a disputed claim against another accepts and retains a less amount than he

claims is due which is offered by the other in full settlement of such claim it operates as an accord and satisfaction of such claim, and further controversy respecting it is ended. *Harrington* v. *Mutual Benefit Health & Accident Assoc.*, 108 Vt 48, 50, 182 A 179; *Keefe* v. *Fraternal Protective Ins. Co. et al*, 107 Vt 99, 102, 176 A 305; *Dow* v. *Cheney Piano Action Co., supra,* and cases cited.

Here the amount was in dispute; the sum offered was less than that claimed; it was offered in full and final settlement according to the notation on the check and the letter accompanying it. It is different than the check sent in the case of *C. & O. Oil Co. Inc.* v. *Curtis Funeral Home, Inc.,* 106 Vt 342, 175 A 9. There the notation on the check showed payment for a particular item and the debtor later gave further checks on account.

██ To constitute an accord and satisfaction, however, the offer must be such that if the creditor accepts it, he is bound to understand that he takes it in full settlement. *Siwooganock Guaranty Savings Bank* v. *Cushman,* 109 Vt 221, 244, 195 A 260; *Harrington* v. *Mutual Benefit Health & Accident Assoc., supra,* and cases cited. Here the plaintiff knew and understood that the check was sent and offered in full or final settlement. He made his objection to cashing it on that ground.

██ It makes no difference whether the amount offered is in money or by check. If it is accepted, even under protest by the creditor and the check cashed, if that is the medium of the tender, the protest is ineffectual. He is bound by his act and it operates as an accord and satisfaction. *Preston* v. *Grant,* 34 Vt 201, 203; *McGlynn* v. *Billings,* 16 Vt 329; *McDaniels* v. *Lapham et als,* 21 Vt 222, 236; *McDaniels* v. *Bank of Rutland et als,* 29 Vt 230, 235 70 Am Dec 406; *Conn. River Lumber Co.* v. *Brown,* 68 Vt 239, 242, 35 A 56; *Murphy* v. *Little,* 69 Vt 261, 263, 37 A 968; *In re Stevens & Adams, Locklin, Rec.,* 74 Vt 408, 414, 52 A 1034; *Drown's Gdn.* v. *Chesley Est.,* 92 Vt 19, 25, 102 A 102, LRA 1918 A 1056; *Keefe* v. *Fraternal Protective Ins. Co. et al, supra; Siwooganock Guaranty Savings Bank* v. *Cushman, supra; Hanley Co.* v. *American Cement Co.,* 108 Conn 469, 143 A 566; 34 ALR Anno. 1044; 75 ALR Anno. 916.

Does the fact that a creditor who makes no protest about the check as a medium of tender but does make a protest about the amount of the check after its receipt but who makes no offer to return it at that time, but retains it in his possession without cash-

ing it until it is tendered back for cancellation during the trial change the result from that arrived at in the cases heretofore cited? We have been unable to find, nor have we had called to our attention, any case in this state in which this precise question was at issue. The matter has been before the courts in other jurisdictions and has been commented on by various editors and text book writers. It would prolong this opinion beyond any reasonable length if an attempt were made to mention all the comments or analyze all the cases that are somewhat in point, but it will be helpful to mention some of them.

"When a creditor receives a check containing the words 'final settlement' or others of similar import, it is his duty to repudiate the offer and return the check or money remitted within a reasonable time after it is received if he does not care to receive it in full discharge of the indebtedness. The retention of a check for an unreasonable length of time without offering to return it has been held to constitute full satisfaction for the demand it purports to cover." 1 Am. Jur. Accord & Satisfaction, Par. 29.

"Where a check is sent upon condition that it be accepted in full payment of a disputed claim, there is as a general rule, but one of two courses open to the creditor, either to decline the offer and return the check or to accept it with the condition attached." R. C. L. Accord & Satisfaction, Par. 32.

"If he (the creditor) is not willing to accept the check in full payment it is his duty to return it without using it." 1 C. J. Accord & Satisfaction, Par. 85.

In *Canton Coal Co.* v. *Parlin & Orendorff,* 215 Ill 244, 74 NE 143, 145, 106 Am St Rep 162, the court said "If the plaintiff was not willing to accept the check as sent in full of the account and acknowledge receipt of it as requested, it ought to have returned it. The rule that required it to do so is neither harsh or unjust, but it secured to the defendant the right to have its check received as offered, if received at all unless there was a subsequent waiver of that condition."

In *Barham* v. *Bank of Delight,* 94 Ark 158, 126 SW 394, 27 LRANS 439, the court used this language "If the offer of payment was made upon condition, and the plaintiff so understood it, there was but one of two courses open to them, either to decline the offer and return the check, or to accept it with the condition attached."

This language was used in *Sears Grain & Hay Co.* v. *Conger,* 83 Ohio St 169, 93 NE 892, 32 LRANS 380, "The plaintiff had only one alternative, to accept the check as payment in full or to return it."

In *Giles* v. *Vockel et al,* 311 Pa 347, 166 A 849, the language was "He had the alternative of rejecting the check by returning it, thus denying the claim, or accepting it on the conditions of the letter."

The courts used words nearly identical or of the same general nature and effect in the following cases: *Honeysett* v. *White Co.,* 104 Pa Super 535, 159 A 207; *Western Pac. Land Co.,* v. *Wilson* 19 Cal App 338, 125 P 1076; *Sinclair Refining Co.* v. *Unadilla Motor & Supply Co.,* 126 Misc 292, 213 NYS 81; *Bashaw Bros. Co.* v. *City Market Co.,* 187 Minn 548, 246 NW 358; *Kean* v. *Southwest Bank of Dallas,* Texas Civ App, 50 SW 2d 839; *Hamilton* v. *Stewart* (second time before the court), 108 Ga 472, 34 SE 123.

The plaintiff claims that the courts and writers have been lax in expression in speaking of the retention of checks and not returning them and what has been really meant was the acceptance by retaining and using them. In this he is sustained by statements in C. J. S., Accord & Satisfaction, Par. 34. We are loath to agree that so many courts have made use of the language in such a lax manner. We are more inclined to think the words were used advisedly. In this connection Williston on Contracts, Par. 1854, is pertinent: there the learned author says,

> "It seems obvious that nothing can operate as a satisfaction without the mutual assent of debtor and creditor but here, as always, in the formation of contracts, this does not necessarily involve mental assent, as is shown by one commonly recurring state of facts. The case is this: A debtor sends to a creditor

whose claim is unliquidated or in good faith disputed, a check with a letter stating that the check is sent in full satisfaction and that the creditor if unwilling to accept it as such must return it; or it is stated on the check itself that it is in full satisfaction. The creditor takes the check, but immediately writes a letter stating that he refuses to accept the check as full satisfaction, but will apply it in reduction of the indebtedness. Upon these facts the English Court of Appeal first held there was no satisfaction of the cause of action but later practically overruled the decision. A few jurisdictions in the United States have sustained the creditor's contention, that where the debtor attempts to impose such a condition upon the creditor's right to take the check, the question of his assent to the proposition must be dealt with as a question of fact. But the great and increasing weight of authority in the United States is to the contrary, and as a matter of law regards the use or retention of the check by the creditor, with the knowledge of the condition, as assent to it. It is said that the acceptance of the check necessarily involves an acceptance of the condition upon which it was tendered. A retention of a check even for an unreasonable length of time has not always been given this effect, but as the creditor has no more right to retain the check an unreasonable length of time than he has to cash it, unless he accepts it as full satisfaction there seems to be no propriety in distinguishing the two situations."

The plaintiff attempts to distinguish between the retention of a check of a third person and the debtor's personal check. In that connection he relies upon *Day-Luellwitz Lumber Co.* v. *Serrell*, 177 Ill App 30, which involved the check of a third person. In *Seidman* v. *Chicago Eye Shield Co.*, 267 Ill App 77, a case very much in point here, as that involved the debtor's own check which the plaintiff refused to accept in full settlement of the account, but protested the same and after stating they would apply it on account and take further action to recover the balance, nevertheless, held the check until the time of trial, the same court said

> "Where there is no dispute as to the facts upon which the claim of accord and satisfaction is based . . . . the question is one of law to be determined by the court. The position of the creditor in such a situation should be definite and unequivocal. If the proposed settlement and payment of the account tendered is not satisfactory to him, it is the creditor's duty immediately to repudiate the offer and return the check, . . . . a check or draft is not intended for indefinite circulation or hoarding. It is supposed to be negotiated promptly or presented promptly and if he is not willing to take the lesser sum in full he must return the check without using it."

It was therefore held that there was an accord and satisfaction as a matter of law.

The language of the court in *Osage Oil Co.* v. *McGuire,* Texas Civ App, 45 SW 2d 249, is very pertinent,

> "And although the check was in fact never collected, yet it was in plaintiff's possession and ownership during the time he held it. During that time he could have collected it, which was a valuable right to him, and it may well be presumed that the drawer of the check kept money in the bank sufficient to meet it should it be presented for payment; thus surrendering the valuable right of use of the funds while the check was outstanding."

In the absence of an objection as to a check being a proper form of tender, it is as effective as if the tender had been by currency. 62 C. J. Tender, Par. 33; 23 A.L.R. Anno. 1284; 51 A. L. R. Anno. 393. In *Shay* v. *Callanan,* 124 Iowa 370, 100 NW 55 the court said,

> "Payment by check or draft is common in business transactions and the courts uniformly hold that, in the absence of objection, a tender of either is quite as effective as though made in currency of the United States. This is on the ground that in event of ex-

ception thereto the party should have the opportunity of getting the money and tendering it instead of its apparent equivalent, the draft or check."

In the present case the plaintiff kept the check in his possession or in the possession of his attorneys at all times; he was still the owner of it; he made no offer to return it; he did not tender it back until just before the evidence closed at the time of trial and then the offer was limited to "for cancellation". It is true that he told the defendant he wouldn't cash it as it was written, but, for aught the defendant knew he could change his mind at any time and present it for payment. If the defendant cancelled it or stopped payment on it he would lose the benefit of its tender; if he didn't keep money on deposit to meet it in case the plaintiff did present it he would lose the same benefit. If the plaintiff could retain it as he did and then sue as he has done for the full amount, the defendant was not only losing the use of its money in the bank but would also be liable to the plaintiff for interest on the same amount represented by the check. The plaintiff not having objected to the check as a medium of tender, it was the representation of the defendant's money in the possession of the plaintiff. It was as if he had said in substance that he had received the money but it was not enough so he would hold it in his possession but not use it. As we have seen such a protest would be ineffectual.

It was the duty of the plaintiff when he received the check, if he was not satisfied with it and the condition under which it was sent, to return it or offer to return it within a reasonable time. When he did not do this he is bound by his act in keeping it in his possession. 1 Am. Jur. supra; 1 C. J. Accord & Satisfaction, Par. 87; 34 A. L. R. Anno. 1058; 75 A. L. R. Anno. 926. In *Tractor & Equipment Corp.* v. *Chain Belt Co.,* 50 Fed. Supp. 1001, the court used this language, "if retained an unreasonable time then plaintiff may be deemed to have accepted the check and the conditions surrounding its tender just as though he had deposited and cashed it."

The cases recognize that what is a reasonable time depends upon the circumstances of each case. Here the check was retained by the plaintiff from about August 1st until the following April when he gave it to an attorney who, acting for the plaintiff, wrote the defendant that he had the plaintiff's account, which included the check, for collection. The check was never seen again by the

plaintiff until he saw it in court. While it was not in the actual, it was in the constructive, possession of the plaintiff during all that time. Neither the plaintiff or any one for him ever offered to return it to the defendant and it was never tendered to the defendant until the attorney for the plaintiff tendered it "for cancellation" just before the evidence was closed on March 19th, 1948. This suit was not brought until December 1947. The retention of the check by the plaintiff or his attorneys for more than sixteen months before suit was brought and for more than three months after that until it was tendered back in court "for cancellation" was an unreasonable time as a matter of law. *Day-Luellwitz Lumber Co.* v. *Serrell, supra; Willis* v. *City National Bank,* Tex Civ App, 280 SW 270. There are cases which hold that the time of holding a check was not unreasonable as a matter of law or that it was a jury question, but in those the time was much shorter than here or during the time the parties were negotiating for a settlement or there were other and entirely different circumstances than in the present case.

The check as kept and retained by the plaintiff in this case constituted an accord and satisfaction as a matter of law and the motion for a directed verdict should have been granted. The exceptions to its denial must be sustained.

We are aware that there are cases apparently in conflict with the above holding. A careful reading of those that we have had called to our attention discloses, however, some turned upon the particular facts involved and some upon the codes of the states in which the cases were decided. We are satisfied that we have followed the great weight of authority and are impressed with the reasoning of those cases.

Because of our view of the matter it is not necessary to pass upon the other exceptions of the plaintiff.

*Judgment for the plaintiff is reversed and judgment is entered for the defendant to recover its costs. The County Clerk of Orleans County with whom the check of the defendant number 1262 drawn by the defendant to the order of the plaintiff in the amount of $118.87 on the Barton Savings Bank & Trust Co. and the letter which accompanied such check are impounded is directed to deliver such check and letter to the plaintiff forthwith.*