No. 17,877.

METROPOLITAN STATE BANK, INC. *v.* ARTHUR COX, ET AL.
(302 P. [2d] 188)

Decided October 8, 1956.

Messrs. IRELAND, IRELAND, STAPLETON & PRYOR, Mr. WILLIAM B. NAUGLE, for plaintiff in error.

Mr. LENNERT T. ERICKSON, Mr. PHILIP A. ROUSE, for defendants in error Arthur Cox, Tribune Grain, Inc., and Sullivan, Inc.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THE record in this proceeding contains the pleadings, evidence and judgment of the trial court in three separate actions disposed of in the district court of Adams county.

The Metropolitan State Bank, Inc., to whom we will hereinafter refer as the bank, and William E. Rust to whom we will refer by name, were defendants in each of the three actions. Plaintiffs in the actions were Arthur Cox, the Tribune Grain, Inc., a Kansas corporation, and Sullivan, Inc., another Kansas corporation. We will refer to the corporate plaintiffs by name. The trial court did not consolidate the above mentioned actions but permitted the parties by stipulation to present the testimony applicable to all cases in one trial in order to avoid needless repetition.

In the complaint filed by Cox against said above-named defendants it was alleged: That defendant Rust was a commission merchant acting as agent for various principals in the sale of trucks, tractors and trailers, with his place of business located in Adams county; that

Rust, acting for and on Cox's behalf sold a tractor for the sum of $6,120.00 and received payment of that amount by check from the purchaser; that he deposited the check thus received with the defendant bank and informed the bank that the proceeds from the sale of the tractor, in the amount of $5,000.00, were to be paid to the owner of the truck, plaintiff Cox; that the bank knew, or had reason to know, that Rust issued to Cox checks totalling $5,000.00 which was due Cox on account of the sale of his tractor; that the bank refused to honor two of said checks totalling $4,500.00 from Rust's account to which had been deposited the $6,120.00 check received at the time of the sale; and that the bank appropriated to its own use proceeds from the sale of the tractor to discharge a personal obligation owed by Rust to the bank. Cox prayed for judgment in the sum of $4,500.00 against the bank. Default judgment was entered against Rust, and in all three cases he makes no appearance except as a witness.

In its answer the bank denied that Rust acted as a commission merchant or was agent for Cox, and affirmatively alleged that Rust was indebted to the bank and that the proceeds of the check deposited by Rust to his account were appropriated and set off against Rust's debt to the bank, leaving $1,405.00 still due the bank for which judgment had been obtained.

In the second action above mentioned, the Tribune Grain, Inc., alleged that Rust acted as a commission merchant and agent for various principals in the sale of implements and various types of grain, and that between December 18 and December 20, 1954, he purchased from the company grain valued at $1,738.44 for which amount he issued his check to the company, drawn on the defendant bank. In the complaint it was alleged that Rust immediately sold said grain and deposited the proceeds from the sale in his account with the bank and that defendant bank knew, or should have known, that the deposits thus made by Rust were for the specific purpose

of honoring checks issued to pay the company for the grain purchased by him. It further was alleged in the complaint that the bank appropriated the proceeds from the sale of the grain by Rust to pay his indebtedness to the bank, and judgment was sought in the sum of $1,738.44 against the bank.

In its answer the bank admitted that it refused to honor checks drawn by Rust in favor of the Tribune Grain, Inc., and set up the same affirmative defense upon which it relied in connection with the claim of Cox.

In the third action, Sullivan, Inc., states a claim in all respects the same as that alleged by the Tribune Grain, Inc., except that the amount of grain sold by them to Rust came to the sum of $2,860.46. With this exception the issues raised by Sullivan, Inc., and the bank were the same as those presented by the pleadings in Tribune Grain, Inc., vs. defendant bank.

The evidence was sufficient to establish the facts found by the trial court, which we summarize as follows: That Rust was a dealer in tractors, trailers and similar vehicles; that he had conducted his banking business with defendant bank for several years and the bank was familiar with his method of doing business; that in some instances he acted as agent for disposing of vehicles, in other instances he would buy the same outright, and in still other instances he would sell trucks or trailers on commission. At the time of the transaction in question, between Cox and Rust, the latter was indebted to the bank in a sum in excess of $8,000.00, which indebtedness was long past due and the bank had for some time been endeavoring to secure collection, without success. Mr. Fash, cashier of the defendant bank, acting under direction of the bank prepared and delivered a deed under the terms of which Rust conveyed to the bank certain real estate. This deed was delivered to the bank the night before the sale of the tractor by Rust and the receipt by him of $6,120.00 from the purchaser of the tractor. There is no dispute in the testi-

mony concerning the effect of this instrument together with the concurrent understanding concerning a repurchase of the property by Rust. It was the intention of the bank and Rust that the latter was to have three months after the date of the deed in which to repurchase the property from the bank, the purchase price being the amount owed the bank at the time of the delivery of the deed plus any additional interest and cost in connection with the transaction. At the time of the execution of the deed there was a valid lien on said property securing an indebtedness of $13,000.00 and the bank admits knowledge of this lien. The deed covenanted that the property was free and clear of any other liens. The testimony of Rust is to the effect that he indicated to the bank that there might possibly be a second deed of trust recorded against the property at the time its conveyance was agreed to by the parties. This is denied by the defendant bank.

December 18, 1954, a second deed of trust securing $12,336.06 was recorded. The bank upon learning of the existence of the second deed of trust did not record the warranty deed. It felt that the property taken in payment of Rust's indebtedness was insufficient in value, and concluded that it was unjustified in releasing the debt owed by Rust, and accordingly refused to go through with the settlement made with him. Rust deposited the money received for the sale of the tractor belonging to Cox and delivered checks totalling $5,000.00 to Cox to compensate him for his share in the sale price of the tractor. The bank honored one check in the sum of $500.00 but refused to honor the others and seized Rust's account to pay the outstanding obligation of his due and unpaid notes to the bank. The amount of money on deposit thus seized by the bank was $6,270.94.

Upon the trial of the case Cox contended that under the foregoing circumstances there was a trust relationship established and that the bank was obligated to honor the checks drawn upon the deposit payable to his order.

The trial court did not base its judgment upon the existence of any trust relationship or upon the alleged existence of a special deposit made to the credit of Rust's account. In this connection the court said:

"The issue of law upon which this case is decided and upon which proposition the Court makes its ruling is as follows:

"DID THE DEFENDANT METROPOLITAN STATE BANK, INC. ENTER INTO A DISCHARGE CONTRACT WHICH CONTRACT ACTED AS FULL ACCORD AND SATISFACTION OF THE OUTSTANDING NOTES OF THE DEFENDANT WILLIAM E. RUST?"

No pleadings in the several actions raised an issue of accord and satisfaction which under Rule 8 (c) is an affirmative defense and must be specifically set forth in the pleadings; however Rule 15 (b) provides in part:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

No objection was made by any party to the evidence introduced concerning the execution and delivery by Rust of a warranty deed in satisfaction of the debt which he owed to the bank.

The trial court in deciding the actions upon the theory that the delivery of the deed constituted an accord and satisfaction stated in part as follows:

"The principal questions in determining whether an accord and satisfaction has taken place, says Corbin # 1276, are:

"(1) Did the parties in fact agree that the performance rendered should have this operation?

"(2) Does that performance constitute a sufficient consideration for a return promise or for a discharge?

"As to the first question one must look to the entire surrounding facts and circumstances.

"The defendant bank, deeply concerned over the fact that defendant Rust was in default on his notes, made strong overtures to him to pay same. This was not done. The notes were unsecured and months in default. The cashier of the bank testified that he approached the defendant Rust with the idea of placing a second mortgage on some realty to secure these notes. Rust replied that he couldn't, that there existed a possibility that a second mortgage was on this realty though same might not have been recorded. The cashier suggested refinancing the notes elsewhere. Rust was unable to do so. The cashier then proposed that Rust convey certain real estate that he owed to the bank and the bank would consider the obligations paid. To this Rust agreed. The real estate in question at the time had a deed of trust and note with a balance of about $13,000.00. The bank prepared the warranty deed and tendered same to Rust, who later delivered the deed to Mr. Fash, an agent of the bank, at this home at about midnight December 20, 1954.

"The delivery of the deed was the performance of the prior executory accord to do so. It was accepted by the bank, through its agent.

"The deed was taken to the Clerk & Recorder's office, by the bank to place same of record. This was done the morning of December 21st. It was then learned that the second deed of trust and note in the amount of $12,336.06 had been placed of record the prior Saturday (December 18, 1954). The deed was not recorded. The money in Rust's account was then seized to pay the outstanding notes of Rust.

\* \* \*

"The bank felt it was defrauded, that it had been deceived as to the indebtedness against this realty. It

refused to recognize the transaction was valid. Rust denied that he had intended to or did defraud or misrepresent the facts to the bank. Whatever may be the true state of the facts; it is clear that the bank intended that this deed would act as a discharge of Rust's account. Its cashier so stated. The property would now be carried as an asset, not as a security transaction. The language of the cashier is to the effect that the bank, after the deed had been executed and delivered, considered the notes paid. Clearly then in fact the parties agreed that this performance and conveyance would have the effect of an accord and satisfaction.

\* \* \*

"And yet, argues the defendant, there were misrepresentations, false statements, and conveyance occurred without full disclosure of obligations against the property. This is denied by defendant Rust. But assuming that the allegations and testimony of the bank be true, can the bank as grantee of a warranty deed, after delivery and acceptance by it, cancel the deed and revest title in the grantor? This Court thinks not. The grantee must either secure the consent of the grantor or take positive legal action to have said investment set aside and declared in equity null and void. To avoid the consequences of an instrument entered into either mistakenly or as a result of an artifice the party so desiring relief must do so by the proper method and in the proper forum. He cannot by his election set aside the instrument without recourse to the law.

\* \* \*

"Based upon the facts stated herein and conclusions of law stated herein, the Court finds that a valid and subsisting accord and satisfaction had been entered into between William E. Rust and the Metropolitan State Bank, which contract discharged effectively his obligations to the bank as intended by the accord and satisfaction; save and except that this Court makes no finding

as to the equitable claim for rescission of this deed as same is not property before the Court. * * *"

### Question to be Determined.

■ *Where a warranty deed containing an express covenant that the real estate conveyed is subject to only one deed of trust is delivered and accepted by the grantee in discharge of a debt due him from the grantor, and immediately after receipt of the deed the grantee discovers that the property is subject to the lien of a second deed of trust; does the grantee have the right to treat the transaction as a nullity?*

■ The question is answered in the affirmative. The trial court erred in holding that the transaction, involving delivery of the deed, discharged Rust's debt to the bank over the objection of the bank that it had no knowledge of a second deed of trust, and never would have made the agreement if the fact of a second lien had been known. The trial court erred further in refusing to make a finding "as to the equitable claim for rescission of this deed as same is not properly before the Court." If, in fact, the deed was accepted by the bank upon the representation that the property was subject to but one lien, then no valid accord and satisfaction of the old debt ever was had because there was no meeting of the minds of the parties. If, however, the bank had knowledge of the second deed of trust and with that knowledge agreed to accept the deed in satisfaction of the debt, it could not thereafter unilaterally terminate the agreement and treat it as a nullity. The court should have made findings upon the evidence bearing on this issue. There could be no discharge of the debt if fraud was committed to the prejudice of the bank in the representations made concerning encumbrances. In the event that no fraud was committed then of course the bank would be held to its agreement and the judgment of the trial court would be correct. We think it sufficient to direct attention to the statement of the rule as set forth in 1 C.J.S., p. 471, in support of

our conclusion. We quote the following statement:

"Inasmuch as an accord and satisfaction is dependent upon contract, and requires a meeting of the minds of the parties, the relevant facts must be known to both parties, in order to render it valid and effectual, and each party must be appraised of the contentions of the other. So an accord and satisfaction entered into through or as a result of mutual mistake of fact, or such a mistake by one of the parties as to amount to a complete difference between what he supposed he was receiving or giving up and what was in fact received or given, so as to constitute a want of meeting of the minds or an absence of consideration, or one induced by fraud, imposition, overreaching, or misrepresentation, or by concealment of a material fact, such that if it had been known to the other party he would not have entered into the accord, is voidable and ineffective, and, as elsewhere appears, may be set aside at the instance of the injured party (infra §§ 42-44), unless, after learning the facts, he affirms the transaction, in which case it is effectual and binding upon him. An agreement and its performance cannot constitute an accord and satisfaction of a claim or demand, the existence of which was unknown to the creditor when he made the agreement, nor does the giving and receipt of a thing or promise amount to or effect an accord and satisfaction where it is the result of coercion or what is known as 'business compulsion.'"

The judgments are reversed and the causes remanded for further proceedings in harmony with the views herein expressed.