**BOARD OF COUNTY COMMISSIONERS, COUNTY OF EAGLE, STATE OF COLORADO, Plaintiff–Appellee,**

v.

**FIXED BASE OPERATORS, INC., Defendant and Third–Party Plaintiff–Appellant,**

and

**Eagle County Air Terminal Corporation and James Ronald Fritze, in his Official Capacity as County Attorney of Eagle County, Third–Party Defendants–Appellees.**

No. 96CA1042.

Colorado Court of Appeals, Div. I.

April 3, 1997.

As Modified on Denial of Rehearing May 1, 1997.

Ireland, Stapleton, Pryor & Pascoe, P.C., Monte Pascoe, Tucker K. Trautman, Shawn D. Mitchell, Denver, for Plaintiff–Appellee

Board of Commissioners, County of Eagle, State of Colorado, and Third–Party Defendants–Appellees Eagle County Air Terminal Corporation and James Ronald Fritze, in his Official Capacity as County Attorney of Eagle County.

Popham, Haik, Schnobrich & Kaufman, Ltd., Douglas M. Tisdale, Edward A. Dauer, Stephen C. Larson, Denver, for Defendant and Third–Party Plaintiff–Appellant.

Opinion by Judge HUME.

This appeal arises from a dispute between plaintiff, the Board of County Commissioners for Eagle County (Board), and defendant, Fixed Base Operators, Inc., doing business as Vail/Beaver Creek Jet Center, concerning the parties' respective rights and duties under the terms of their Eagle County Regional Airport (Airport) lease agreement. Defendant appeals the trial court's order denying its motion for preliminary injunction against the Board. We affirm.

In August 1986, the Board entered into a lease agreement with defendant's predecessor to provide general aviation and commercial passenger terminal services at the Airport. In December 1992, defendant took an assignment of the lease and assumed its predecessor's obligations. In 1994, the Board began investigating whether to exercise its reserved right to develop further the commercial passenger operations and facilities at the Airport.

In early 1995, defendant submitted a proposal to the Board to construct a new hangar. That proposal was accepted in conjunction with an amendment (fifth amendment) by which defendant waived any interest it had held to specified parcels under the lease agreement.

Meanwhile, the Board continued with its plan to construct and operate a second commercial passenger terminal at the Airport. Toward that end, the Board established the Eagle County Air Terminal Corporation (ECAT). ECAT is a non-profit corporation, owned and controlled by the county, that was expressly authorized to issue bonds to finance the construction and operation of the new terminal building. ECAT is also autho-

rized by the Board to receive passenger facility charges (PFCs) and to use those funds to discharge the bonds and to operate the new terminal.

During the course of negotiations between the Board and defendant concerning whether the county would purchase the existing passenger terminal from defendant and ongoing discussions concerning the new terminal, defendant requested to inspect county documents pursuant to § 24–72–201, et seq., C.R.S. (1988 Repl.Vol. 10B). The Board filed an action for declaratory judgment authorizing it to withhold disclosure on the ground that release of the documents would be injurious to the interest of the public in the Board's ongoing negotiations. Defendant filed a separate action seeking to compel disclosure of the public records in question. Those two actions were later consolidated, and defendant counterclaimed against the Board seeking injunctive relief and damages under various tort and contract theories. In addition, defendant filed third-party complaints against ECAT, American Airlines, Inc., and James Ronald Fritze, in his official capacity as Eagle County Attorney.

In May 1996, defendant filed a motion for preliminary injunction against the Board, ECAT, Fritze, and American Airlines. That motion sought to enjoin the financing, construction, and operation of the new terminal, claiming irreparable injury, inadequate remedy at law, and challenging the legality of the Board's financing and operational plan.

Following a hearing, American Airlines was dismissed as a party to the preliminary injunction proceeding, and, with some exceptions not pertinent here, the trial court entered an order denying the motion for preliminary injunction. That order is the subject of this appeal.

I.

The granting or denial of a preliminary injunction lies within the sound discretion of the trial court. Because injunctive relief against a branch of government constitutes a form of judicial interference, courts are generally reluctant to grant such relief. Such judicial deference is based upon the

doctrine of separation of powers, which serves to restrain one governmental branch from usurping or restraining the proper exercise of the powers of another branch. Hence, such injunctive relief should be granted sparingly and with full conviction on the part of the trial court of its urgent necessity. *Rathke v. MacFarlane*, 648 P.2d 648 (Colo. 1982).

■ In exercising its discretion, the trial court must find that the moving party has demonstrated: 1) a reasonable probability of success on the merits; 2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief; 3) that there is no plain, speedy, and adequate remedy at law; 4) that the granting of the preliminary injunction will not disserve the public interest; 5) that the balance of equities favors the injunction; and 6) that the injunction will preserve the status quo pending a trial on the merits. If each criterion is not met, injunctive relief should not be granted. *Rathke v. MacFarlane, supra.*

■ An appellate court reviewing a ruling on a motion for preliminary injunction does so with great deference to the conclusion reached by the trial court. A trial court's ruling will be overturned only if it is manifestly unreasonable, arbitrary, or unfair. However, if the issue being reviewed concerns only legal, rather than factual questions, a preliminary injunction ruling is subject to independent and *de novo* appellate review. *Evans v. Romer*, 854 P.2d 1270 (Colo.1993).

■ Nevertheless, an appellate court's ruling on review of an order granting or denying preliminary injunctive relief does not constitute an adjudication of the merits of a properly pleaded claim for permanent injunctive relief, and this opinion does not address such ultimate issues. See *Allen v. City & County of Denver*, 142 Colo. 487, 351 P.2d 390 (1960). See also *Governor's Ranch Professional Center, Ltd. v. Mercy of Colorado, Inc.*, 793 P.2d 648 (Colo.App. 1990).

Here, the trial court found that, although defendant may ultimately succeed on the merits concerning some of its claims based upon the Board's breach of the lease contract, it concluded that such injuries were compensable by ascertainable damages in an action at law. Hence, the trial court determined that the injuries were not irreparable and that defendant had an adequate remedy available at law.

After reviewing the record, we are satisfied that the trial court's findings and conclusions concerning the claims based upon the lease contract, whether sounding in tort or in contract, are supported by competent evidence. Accordingly, we will not disturb that determination on review.

However, because some of defendant's contentions involve assertions that its injuries may not be adequately compensable in damages, we address those contentions separately.

## II.

■ Defendant contends that the trial court erred in concluding that it had not demonstrated a reasonable likelihood of success on the merits of its claim that its interests in certain land conveyed under the lease would be lost as a result of the Board's threatened actions. We disagree.

The record contains evidence supporting the trial court's findings and conclusions that defendant had voluntarily negotiated the fifth amendment to the lease contract after fully consulting with counsel. Under that amendment, defendant had exchanged its interests in the property in question for the right to construct a hangar on other lands.

■ The voluntariness of a party's conduct or acquiescence in the terms of an agreement is a question of fact to be determined by the trial court's assessment of the totality of circumstances surrounding the event in question. The trial court's findings will not be disturbed unless clearly erroneous. *See University of Colorado v. Derdeyn*, 863 P.2d 929 (Colo.1993); *First National Bank v. Groussman*, 29 Colo.App. 215, 483 P.2d 398 (1971).

The trial court also concluded that defendant had ratified the fifth amendment to the lease by accepting benefits derived therefrom and was thus estopped from asserting duress in an attempt to void the amendment. Once

again, that conclusion is based upon evidence placed of record before the trial court and is supported by sound legal authority. *See Metropolitan State Bank, Inc. v. Cox*, 134 Colo. 260, 302 P.2d 188 (1956)(one who accepts benefit of a contract affirms that contract and cannot later void it for duress). Hence, the trial court's conclusion will not be disturbed on appeal.

## III.

Defendant next contends that the trial court erred in concluding that it had failed to demonstrate a likelihood of success regarding its claim that the Board's actions in creating and using ECAT are not authorized by law. We disagree.

■ Counties have only such powers as are either granted to them by the state constitution or delegated to them by the General Assembly. A county's implied powers are limited to those reasonably necessary to the execution of expressly delegated or conferred powers. *Beaver Meadows v. Board of County Commissioners*, 709 P.2d 928 (Colo.1985).

■ Section 41–4–101, et seq., C.R.S. (1993 Repl.Vol. 17A) authorizes counties to establish, construct, improve, maintain, and operate airports. Section 41–4–106, C.R.S. (1993 Repl.Vol. 17A) allows counties to enter into contracts or otherwise cooperate with federal governmental or other public or private agencies and to exercise such powers as may be required in or consistent with the furtherance of commerce and navigation by air.

Here, the Board created ECAT as an enterprise as defined by Colo. Const. art. X, § 20, and empowered it to act on the county's behalf in constructing and operating the new commercial passenger terminal. In our view, the Board was acting pursuant to express grants of constitutional and statutory authority in so doing.

Thus, we conclude that the Board did not act in excess of its authority in creating and empowering ECAT to act in its behalf.

## IV.

Defendant also contends the court erred in concluding that ECAT is not a district but, instead, is an enterprise under the Colorado Constitution. We perceive no error.

Colo. Const. art. X, § 20(2)(b) defines "District" as the state or any local government, excluding enterprises. Colo. Const. art. X, § 20(2)(d) defines "Enterprise" as a government-owned business which is authorized to issue its own revenue bonds and which receives less than 10% of its annual revenue in grants from all state and local governments combined.

ECAT is a government-owned and controlled non-profit corporation authorized to issue its own revenue bonds. It receives no revenue in the form of grants from state and local governments.

■ Defendant argues that ECAT's authority to collect PFCs from commercial carriers constitutes a governmental revenue grant that disqualifies it as an enterprise. We reject that argument.

PFCs are passenger facility charges imposed by a public agency on passengers enplaned at a commercial airport it controls. While PFCs may only be "imposed" by public agencies with the approval of the Federal Aviation Administration (FAA), there is no limitation in FAA regulations that precludes collection of such fees by a governmental enterprise. *See* 14 C.F.R. § 158.3 (1996).

Here, evidence showed that the Board had applied to the FAA for authority to impose PFCs and, if such authority were to be granted, to have the PFCs paid to ECAT, a government-owned and controlled business. And, even if the FAA should elect to treat ECAT as a governmental entity or district for purposes of its own regulations, such treatment has no impact on our interpretation of the constitutional definition of an enterprise. *See Board of County Commissioners v. Dougherty, Dawkins, Strand & Bigelow Inc.*, 890 P.2d 199 (Colo.App.1994). Thus, we are not persuaded that the agreement with ECAT constitutes a governmental grant exceeding 10% of ECAT's annual revenues so as to disqualify it as an enterprise.

■ We also reject defendant's argument that allowing ECAT to collect any PFCs that are authorized constitutes a multi-year pledge or obligation of county revenue. The PFCs are akin to user fees assessed and collected from users of airport facilities. As such, they are not county revenues. *See Nicholl v. E-470 Public Highway Authority*, 896 P.2d 859 (Colo.1995).

■ We are likewise unpersuaded that the Board's agreement to indemnify American Airlines against all liability incurred in this litigation constitutes a multi-year obligation that exceeds the Board's authority. The agreement with American Airlines also provides that, if any of its provisions are ruled unenforceable, it shall be construed as if the challenged provision had never been contained therein. Thus, the obligation, to the extent it ultimately proves to be a multi-year obligation, is severable and would be deemed stricken under the terms of the parties' agreement.

### V.

Lastly, we reject defendant's contention that the trial court erred in allowing the bond counsel to testify as an expert about the Board's plan for financing the new terminal building.

■ Pursuant to CRE 702, expert testimony is admissible if scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue. Whether an expert's testimony will assist a fact-finder is within the discretion of the trial court, whose ruling will not be disturbed absent an abuse of discretion. *See Harvey v. Dyer*, 731 P.2d 777 (Colo.App.1986).

Defendant's reliance on *Specht v. Jensen*, 853 F.2d 805 (10th Cir.1988) is misplaced. In *Specht*, an attorney was asked to conclude whether a search conducted under a hypothetical set of facts was illegal. The hypothetical facts posed were identical to the facts of the case before the court. The *Specht* court disallowed the question under those circumstances, but it expressly stated that it did not mean to preclude all testimony regarding legal issues.

■ Here, the expert was asked on direct examination about nonprofit corporations established by counties, about the constitutional definition of an enterprise, and about the county's attempt to comply with Colo. Const. art. X, § 20. She was also asked about procedures the Board used in establishing ECAT. The witness was not asked to opine whether ECAT qualified as an enterprise or whether the Board's actions violated or complied with the constitutional provision.

Indeed, any legal conclusions tendered by the witness were elicited during her cross-examination by defendant's counsel, and thus, any error was injected at defendant's behest. Hence, such error cannot serve as grounds for reversal on appeal. *See Motor Vehicle Division v. Castro*, 914 P.2d 517 (Colo.App.1996).

We perceive no error or abuse of discretion in the trial court's denial of defendant's motion for preliminary injunction.

Accordingly, the order is affirmed.

METZGER and ROY, JJ., concur.